---

(21 Misc. Rep. 179.)

### In re SCUDDER'S ESTATE.

#### (Surrogate's Court, Oneida County. August, 1897.)

1. CO-ADMINISTRATORS—LIABILITY ON JOINT BOND—WHEN ASSERTED.
    In a proceeding by an administratrix against the legal representatives of her co-administrator to recover funds belonging to the estate, her individual liability to contribute with the deceased administrator upon their joint bond as administrators cannot be determined.

2. ADMINISTRATORS—PERSONAL LIABILITY—BANK DEPOSITS.
    An administrator deposited the estate's funds in a bank of which he was manager, and whose financial policy he directed. He knew that the affairs of the bank were in such a condition that suspension was unavoidable, and the bank afterwards went into the hands of a receiver, who paid a percentage dividend on the deposit. *Held*, that the administrator was personally liable for the balance.

3. SAME—WHEN ENFORCEABLE.
    Such administrator died without accounting. Code Civ. Proc. § 2606, provides that upon the death of an administrator the surrogate's court has the same jurisdiction to compel the executor or administrator of the decedent to account as it would have had against decedent if his letters had been revoked. *Held*, that decedent's estate was liable for the balance immediately, without waiting for the bank's receiver to marshal its assets.

4. SAME—INTEREST.
    An administrator withdrew estate funds from a bank paying 2 per cent. interest, and placed them in a bank under his own control, which he knew to be in unsound financial condition, and which failed. *Held*, that the interest on the deposit, for which the administrator was personally liable, should be calculated at 2 per cent.

5. SAME—COMMISSIONS.
    An administrator who causes a loss of estate funds by negligently removing them from a secure depository to a bank under his own control, which he knows to be financially unsound and liable to failure, will not be allowed commissions.

Accounting by the representatives of George Barnard, deceased, former administrator of the estate of Samuel O. Scudder, deceased, for funds of the latter estate in their hands. Objections were filed by Elizabeth R. Scudder, surviving administratrix of the estate, and others, to the allowance of a certain item. Sustained.

J. S. Baker, for Elizabeth R. Scudder.

Eugene A. Rowland, for Nelson C. Scudder.

Oswald P. Backus, for Fred. M. Barnard and James E. Barnard.

H. S. Bedell, for Harmon G. Utley.

E. L. Stevens, for Wheeler Armstrong.

CALDER, S.   Samuel O. Scudder died at the city of Rome, N. Y., intestate, on or about March 2, 1895; and on the 9th day of May, 1895, Elizabeth R. Scudder, his widow, and George Barnard, were duly appointed administrators of his estate.   The bond given by them was a joint and several one, in the penal sum of $120,000, and contained as sureties thereon Harmon G. Utley, Wheeler Armstrong, Henry Barnard, Charles F. Barnard, and James E. Barnard.   George Barnard, one of said administrators, died on or about January 31, 1896, intestate; and in the proper proceeding, and on or about the 13th day of February, 1896, James E. Barnard and Fred. M. Barnard were duly appointed his administrators.   Pursuant to an order of the court, the representatives of George Barnard filed their account of the assets in their hands belonging to the Samuel O. Scudder estate, which account, among other things, showed a deposit in the Ft. Stanwix National Bank of Rome, N. Y., amounting to $18,709.62, and for which sum they sought credit.   Said bank closed its doors on or about January 31, 1896, and early in February went into the hands of a receiver. There seems to be no dispute as to any other items.   Said George Barnard had the active, if not the exclusive, management of said estate, and he was the cashier of said bank.   Objections were filed by Nelson C. Scudder, one of the next of kin of Samuel O. Scudder, deceased, and by Elizabeth R. Scudder, the surviving administratrix, alleging that said sum was deposited, or allowed to remain on deposit, by the said George Barnard, knowing that said bank for a long time prior to January 31, 1896, was insolvent and an unsafe place of deposit, and that by reason of his negligent acts his estate should account for any loss.   It appears that on August 9, 1895, a sight draft signed by Elizabeth R. Scudder and George Barnard, as administrators of the S. O. Scudder estate, was drawn upon E. C. Benedict & Co., of New York City, by which there was transferred from said bank in New York to the Ft. Stanwix National Bank of Rome, N. Y., the sum of $18,-510.21.   The sureties upon said bond and the representatives of George Barnard therefore insist that, if there be any loss as to said sum of $18,510.21, the said Elizabeth R. Scudder should be held individually liable; she having carelessly and negligently signed said draft, and participated in the act of transfer of said fund.   It is conceded, however, that the receiver of the Ft. Stanwix National Bank of Rome has paid to the surviving administratrix herein, as dividends upon the entire deposit, the sum of $9,354.81.

Considerable evidence was given by which the individual liability of Mrs. Scudder was sought to be fixed, but in a proceeding of this character it is not necessary or important to determine what might be her individual responsibility.   She is not here seeking relief as an individual.   She is the representative of the Samuel O. Scudder estate, and is bound to protect its interests.   What may be her status

in some other capacity is another question. If George Barnard were guilty of acts which entailed a loss upon the Scudder estate, his estate is liable therefor, and the surviving representative of the Scudder estate is the proper party to begin a proceeding to recover any deficit; and if, as an individual, she participated with George Barnard in certain negligent acts, his estate, or the sureties upon their joint bond, cannot, in a proceeding of this character, ask that she contribute as an individual. The sureties and the representatives of Barnard insist that her liability be determined, that she be removed, a successor appointed, and that with them there may be determined the liability of all in a proceeding instituted by either the next of kin or a new representative of the Samuel O. Scudder estate. In such a proposition they fall into error. This is not the relief sought in any proceeding before this court. The question here is as to the liability of the estate of George Barnard. If that estate be free from liability, that is the end of this controversy. There is no doubt but that they are correct in the general proposition that, where two administrators participate in negligent acts by which an estate is jeopardized or loss arises, they may become liable, and their liability fixed and determined in the proper proceeding; but what those rights and liabilities are cannot well be fixed in a proceeding instituted on behalf of an estate against the representatives of a deceased person for an accounting in that particular estate. Upon a proceeding instituted by an executor for an accounting there may be charged to him certain investments or items, and certain things may be disallowed in his account, and for which he must make up the deficit. That is far different from this proceeding. On the other hand, if Mrs. Scudder, as an individual, were seeking to recover lost moneys, and endeavoring to hold the Barnard estate or the sureties liable, they might properly ask that there be charged to her any individual liability. If a decree be entered against the estate of George Barnard, and that estate be insolvent, she, as surviving administratrix and the representative of the Samuel O. Scudder estate, is the proper party to begin an action against the bondsmen, although the sureties upon said bond are her sureties as well. In an action of that character said sureties could not successfully charge her with any individual responsibility, but would have recourse against her in an action for contribution. By this practice what may be the individual responsibilities and liabilities, and the reciprocal relations between the bondsmen and her, can then be determined. The bond was given for the protection of the Scudder estate, and as an estate it is not interested in the effort of the bondsmen to compel their principal to contribute. Sureties are liable for the joint acts of the principals and the individual negligence of each. Boyle v. St. John, 28 Hun, 454, was an action brought to determine the liability upon an administrator's bond. The plaintiff and one Erlacher were duly appointed the administrators of the estate of William M. Kilduff, the bond furnished by them being a joint and several one. Erlacher misappropriated the funds of the estate and was adjudged to pay the deficiency. The court said:

"The plaintiff is really the estate. Mrs. Boyle is but a name used by the law to recover the money misappropriated by Erlacher. She is the person in whose favor

the decree is made, and must be the plaintiff to recover the amount. If Mrs. Boyle is liable herself, as an individual, upon the bond, the sureties have an action for contribution against her. Her liability cannot be asserted in this action, because the estate is entitled to the whole default from either one of the signers of the bond. She is the proper legal plaintiff, and the defendants are each liable to the whole amount, as against the estate."

In Hood v. Hayward, 48 Hun, 338, 1 N. Y. Supp. 566, the court said:

"The plaintiff's participation in the investments which resulted in loss to the estate furnishes no answer to her effort, as executrix, to recover all their moneys from the sureties. This action is really by the estate to get back the money lost by wrongs for which Frederick Hood was liable, and it matters not who participated therein, so long as the beneficiaries of plaintiff's trust did not do so."

Sperb v. McCoun, 110 N. Y. 605, 18 N. E. 441, was an action upon an administrator's bond. The proceeding was originally brought in the surrogate's court of Queens county, where the plaintiff and one Burton T. Beach were appointed administrators of the estate of Gilbert Dunspaugh. The bond was a joint and several one, containing the usual conditions. Subsequently Beach misappropriated a certain sum belonging to the estate, and thereupon the co-administrator began proceedings against Beach for an accounting, wherein he was directed to pay the plaintiff, as administrator, the money received by him. An execution having been returned unsatisfied, plaintiff began an action against the sureties for the deficiency, and recovered the full amount named. As to what plaintiff's individual responsibility might be, the court said:

"We do not deem it important now to determine the precise relation which the plaintiff individually, as one of the principals in the bond, bears to the sureties, in reference to the default of Beach. We will assume, as most favorable to the appellant, what has apparently been decided in some cases,—that he, as one of the principals, will be bound to indemnify the appellant for any sum which may be recovered against him on account of the default of Beach. And yet we are of opinion that as administrator representing the estate he can maintain this action. As against the plaintiff suing in his representative capacity, the defendant cannot set up as a bar to the action any counterclaim or defense which he has against him as an individual. As surety, the defendant is bound to answer for the default of Beach, so that the money misappropriated may be made good to the estate; and after he has paid as surety he may take his remedy, if he has any, against the plaintiff individually, as one of his principals, for indemnity. In this way the estate will be protected by the bond, and the defendant, as surety, will have all the indemnity which the law gives him."

What Mrs. Scudder's liability as an individual may be to the parties in this controversy cannot, therefore, be determined in this proceeding.

It is also urged that any decree entered herein would be premature, as it is uncertain what the deficit may be, if any, and that a different rule should herein be applied, inasmuch as the representatives of George Barnard have no control or authority over said deposit or fund, that they are unable to collect the same, and that the Samuel O. Scudder estate should exhaust its remedy in the collection of dividends before a final determination be made. Section 2606 of the Code of Civil Procedure is as follows:

"Where an executor, administrator, guardian or testamentary trustee dies, the surrogate's court has the same jurisdiction, upon the petition of his successor, or of a surviving executor, administrator or guardian, or of a creditor, or person interested in the estate, or of a guardian's ward, to compel the executor or administrator of the decedent to account, which it would have against the decedent if

his letters have been revoked by a surrogate's decree. And an executor or administrator of a deceased executor, administrator, guardian, or testamentary trustee may voluntarily account for any of the trust property which has come to his possession, and upon his petition such successor or surviving executor, administrator, or guardian or other necessary party shall be cited and required to attend such settlement. With respect to the liability of the sureties in, and for the purpose of maintaining an action upon the decedent's official bond, a decree against his executor or administrator, rendered upon such an accounting, has the same effect as if an execution issued upon a surrogate's decree against the property of decedent had been returned unsatisfied during decedent's lifetime. So far as concerns the executor or administrator of decedent, such a decree is not within the provisions of section twenty-five hundred and fifty-two of this act. The surrogate's court has also jurisdiction to compel the executor or administrator at any time to deliver over any of the trust property which has come to his possession or is under his control, and if the same is delivered over after a decree, the court must allow each credit upon the decree as justice requires."

Section 2552 has no application here. The authority to compel an accounting of the character indicated was first given by the statute of 1880. Before that time the representatives of a deceased administrator or executor could not be compelled to account or deliver the trust property to the proper party, except there was filed a bill of discovery in a court of equity to ascertain the condition of the estate, and to compel the delivery thereof according to equitable principles. The statute and the amendatory acts thereof which broadened the remedy were enacted to protect estates, to prevent loss, to preserve the identity of assets, and to prohibit an arbitrary representative of a deceased executor or administrator from retaining in his hands any trust property. An accounting can be compelled immediately upon the appointment of the executor or administrator of the deceased administrator or executor (In re Wiley, 119 N. Y. 642, 23 N. E. 1054); and by the entry of the proper decree the status of the estate may be fixed, the value and extent of its assets measured, and the liability for any loss determined. If George Barnard negligently deposited the funds of the Samuel O. Scudder estate in the Ft. Stanwix National Bank, knowing its true condition, it is his loss, and a misfortune, perhaps, for his sureties; but the Scudder estate should not suffer or be delayed in the collection of its property until the receiver of said bank has marshaled all its assets,—a process extending through several years, perhaps, and depending somewhat on the result of various and prolonged litigations. The loss, if any, must be borne by those who have assumed the liability. The statute contemplates the entry of a decree in cases of this character. It expressly states that, in respect to the liability of the sureties, a decree against the executor or administrator has the same effect as if an execution had been issued against decedent in his lifetime, and had been returned unsatisfied. If any of the obligations imposed by statute upon the administrator have been violated, the time has arrived when the conditions of the bond must be enforced. The position of the representatives of George Barnard and the sureties is untenable.

Considerable evidence was given as to the financial condition of said bank, but it is not necessary to discuss said evidence at length. To the community at large it may have been considered a proper depository, and an institution where strict rules of economy and integrity were followed, and a person unfamiliar with its true condition

might escape liability for any loss; but for one in a fiduciary capacity to deliberately deposit funds there, having knowledge of its situation, would be negligence of the grossest kind, and an example of remissness in the discharge of official duty. An error in judgment, where subsequent events show a loss, and where it may be that the wisest course was not pursued, will not charge one personally, but this controversy presents a widely different aspect. George Barnard was the manager of said bank, and for many years had absolutely directed its financial policy. He had charge of the discounts and investments. He knew the magnitude of its liabilities. He engaged the clerks; made statements to the United States comptroller; oftentimes directed entries on the books of the bank; gave instructions as to the adoption of certain methods, and how they should be followed. He had knowledge of the apparent worthless paper which was carried as valued assets; and in numerous transactions, unnecessary here to recount, he clearly demonstrated his familiarity with the true condition of the bank, and his knowledge of its inevitable suspension. He knew there must come a time when there would be a conflict between the performance of his duties as cashier and his duties as administrator. There is imposed upon an executor or administrator the obligation of depositing funds in a safe place, and in the discharge of his duty he is bound to exercise such care and diligence as are found in men of intelligence and discretion in the conduct of their own business affairs. King v. Talbot, 40 N. Y. 76; McCabe v. Fowler, 84 N. Y. 318. It cannot be said that the disposal of the funds as herein shown was the act of a prudent man, or that there was exercised a proper degree of discretion. From the evidence in this case, and applying the rules which govern the administration of estates, the irresistible conclusion is reached that when George Barnard deposited the funds of the Samuel O. Scudder estate in the Ft. Stanwix National Bank, knowing its true condition, he became personally liable therefor.

There is some conflict of authority as to what should be the proper rate of interest imposed, and no precise rule can be laid down, as each case depends largely upon its own facts. In Re Myers, 131 N. Y. 409, 30 N. E. 135, the executor was charged the full legal rate where he had loaned the trust fund to a firm of which he was a member. In Re Babcock, 9 N. Y. Supp. 554, an executor who was a stockholder and president of a bank was chargeable with interest upon trust funds therein at the rate allowed by the bank on time deposits, which in that case was 3 per cent. The trustee in Cook v. Lowry, 95 N. Y. 104, was charged interest at the legal rate, with annual rests, where he had kept no account of the trust fund, and had personally realized profits therefrom, and had rendered no account therefor. Here the fund was placed to the credit of the Scudder estate, and there is no proof that George Barnard enjoyed any profits therefrom. The Ft. Stanwix National Bank may have been benefited thereby, and may have employed the same in the usual channels of business, and possibly realized the usual rate of discount; and George Barnard may have indirectly participated therein, in the reception of stock dividends, but he should not be considered, according to the weight of the adjudicated cases, as personally employing said fund in his own business. The fund in

question was invested at 2 per cent. at E. C. Benedict & Co.'s Bank, in New York; and, in the absence of personal gain to the administrator, those liable therefor should not pay a greater rate than the fund would have earned had it remained there. Interest is given as an indemnity for any loss, and here the measure of loss is 2 per cent. The negligence of George Barnard should not be a source of profit or an investment to the Scudder estate, by which it would receive a larger revenue than if the duties of the administrator had been faithfully performed. Therefore the amount as established in this case which the estate of George Barnard should account for and pay to the Scudder estate is the sum of $18,709.62, with interest on $18,510.21 thereof at 2 per cent. from August 9, 1895, upon which latter sum there should be credited at the respective times of payment the sum of $9,354.81, being the dividends paid by the receiver of the Ft. Stanwix National Bank. The award of costs is in the discretion of the court, and it is within equitable principles that in this controversy the estate of George Barnard should pay costs to the Scudder estate, the amount of which may be determined on the settlement of the decree herein. Commissions are awarded to an administrator or executor for the faithful discharge of his duties, but, where it is shown that his administration has been characterized by negligence or unfaithfulness, commissions may be withheld. Cook v. Lowry, 95 N. Y. 114; Stevens v. Melcher, 152 N. Y. 583, 46 N. E. 965; In re Harnett, 15 N. Y. St. Rep. 725. Commissions are disallowed.

There was some argument as to the proper disposition of the deposit remaining in the receiver's hands uncollected, and it is therefore suggested that, if payment of the amount herein found is made to the Scudder estate, said estate should transfer its interest in any future dividend to the persons who will be ultimately called upon to make up any deficiency. Findings in accordance with the foregoing may be submitted, and the proper decree thereupon entered.

Decreed accordingly.