## NEFF v. HARMON.

No. 19418.   Opinion Filed June 3, 1930.

Rehearing Denied Sept. 30, 1930.

Thomas J. Wiley, for plaintiff in error.

Hummer & Foster, for defendant in error.

FOSTER, C.   The original action out of which this cause arose was filed on April 24, 1923, in the district court of Okmulgee county.   In that action O. S. Gould, V. H. Viddison, and John Ladner sued W. L. Stocker, Josie Edwards, and Flesher Petroleum Company.   On June 22, 1923, the Flesher Petroleum Company filed a cross-petition in which it named Wm. Neff as a party defendant and caused summons to be issued and served upon Neff.   The action involved an oil and gas lease on certain real estate located in Okmulgee county, of which Neff owned both the fee and royalty.   Upon application of the Flesher Petroleum Company, E. M. Harmon was appointed receiver on July 27, 1923, after notice of said application had been served upon Neff, who did not appear in court at the time the receiver was appointed.

The order appointing the receiver recites that the plaintiff appeared, and that the defendants W. L. Stocker and Josie Edwards appeared by attorneys, and that Wm. Neff had been served with notice that this application for receiver would be presented at this time, and makes no objection to the granting of said application, but appears not. The order further recites that all parties appearing in open court agreed that the application be granted, and further agreed as to the duties and powers of said receiver, which, among other things, authorized and directed the receiver to collect all oil and gas produced from said land, and that said receiver is empowered to sell any product from said land derived from his operation.   The order further authorized the receiver to collect from any person whomsoever for oil and gas that may have heretofore been produced from said land and not paid for, for any reason whatsoever, and any party to this action who may have received oil or gas from said land shall account to the receiver therefor.

We think the order was sufficient to authorize the receiver to collect the royalty due Neff from the property in question. Pursuant to said order, the receiver collected certain moneys due from gas produced on the lease sold to the Oklahoma Natural Gas Corporation, both as to the working interest and royalty.   He deposited the royalty money in the Miners National Bank of Henryetta in the total sum of $791.57, these deposits being made from August 22nd to November 1, 1923.   The bank failed in December, 1923, and paid as dividends on the deposit $246, leaving a balance of $545.57, which was lost by reason of the bank failure.   Wm. Neff filed a motion to quash the summons issued and served on him at the instance of the Flesher Petroleum Company, which motion was sustained February 4, 1924.   The court made an order on January 14, 1925, making Wm. Neff party defendant.

E. M. Harmon, the receiver, filed his report setting out in detail the amounts received both from working interest and royalty on the lease, which is not necessary to

set out in full here. Wm. Neff filed objection to the final report of Harmon on the grounds that the receiver still was indebted to him and should account to him (Neff) for the sum of $545.57, lost by reason of the failure of the bank. It appears that this deposit was made in the bank under the name of E. M. Harmon, receiver, special account, and was not in any way intermingled with the personal funds of E. M. Harmon.

The lower court overruled the objection of Wm. Neff and approved the final report of the receiver, which, in effect, held that the receiver was not liable for the amount lost by reason of the failure of the bank, and from this order Wm. Neff prosecutes this appeal.

The first assignment of error is stated in the brief of Wm. Neff as follows:

"The order made by the district court of Okmulgee county on July 27, 1923, in so far as it attempted to authorize the receiver to take possession of and seize oil or gas belonging to plaintiff in error as royalties, or proceeds of sale thereof, was void and without jurisdiction, and said receiver in taking and seizing the same was a trespasser."

The argument in support of this assignment is based upon the proposition that when the order of July 27, 1923, appointing the receiver, was made, Wm. Neff was not a party to the action, and therefore the order, in so far as it affected the royalties or his right to the proceeds, was absolutely void.

From a careful consideration of the briefs and authorities on the above proposition, we have come to the conclusion that, under the facts here presented, Wm. Neff was a party to the action, sufficient to authorize the court to appoint a receiver to take charge of the proceeds due Neff from royalties, although the court may not have had sufficient jurisdiction over Neff that he could have granted a personal judgment against him. Neff was not made a party defendant when the original petition was filed, but the Flesher Petroleum Company, in filing its answer and cross-petition, did name Neff as a party defendant and caused summons to be issued and served upon him. Notice was also given Neff that application would be made on the 27th of July for the appointment of a receiver; and although Neff filed a motion to quash the summons so issued, which was some six months later sustained, we think he was a sufficient party to give the court jurisdiction to appoint a receiver. Neff made no objection to the notice of the application for appointment of receiver.

Section 219, C. O. S. 1921, provides as follows:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

Section 224, C. O. S. 1921, provides as follows:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

The statutes above referred to provide that, under certain conditions, the court must make an order that addititonal parties be brought in, where it appears that they are necessary. As we read the statute, however, there is no provision that prohibits parties from being brought in without an order of the court, especially where it appears that the court acquiesced in the act of bringing in the additional parties, and where all the other parties to the action acquiesced therein. The record in this case shows that both the court and the plaintiff and defendant made no objection to Neff being made a party by the cross-petition of defendant Fletcher Petroleum Company.

So far, we have been able to find no case by our court like the one at bar. Many authorities from other jurisdictions are relied upon. The plaintiff first relies upon Albritton v. Lott-Blacksher Commission Co. (Ala.) 52 So. 653. That was a case which involved the appointment of a receiver, it being held that the failure to appear and contest the appointment of the receiver did not preclude the party from asserting the invalidity of the appointment. That case does not support the plaintiff. In that case there was no question as to the parties, but one of the parties failed to appear and contest the receiver and afterwards attacked the order on the ground of its invalidity. The court held that he had a right to do so. So, in the case at bar, Neff might have a right to attack the validity of the appointment, although he did not appear, but the question as to whether or not he was a party was not decided in that case.

Several other cases from other jurisdictions are relied upon, all going to the general proposition that when "one's property is taken charge of by a receiver, the owner

should be a party to the suit, and that this is almost indispensable."

In the case of Syertoson v. Butler (Cal.) 85 Pac. 164, it was held that while the court did not formally grant permission to file a cross-complaint, where the plaintiff made no objection thereto, and new persons were made parties by the cross-complaint, and the new parties were necessary to a complete determination of the controversy, it will be taken that the court considered the cross-complaint to be on file with plaintiff's consent. The court, in the body of the opinion, says:

"While the court did not formally grant permission to file his cross-complaint, the plaintiff interposed no objection thereto, but, on the contrary, assented to the granting of its prayer; and the action of the court upon the demurrer can only be taken as evidence that the court considered the cross-complaint to be on file with its consent. The only question presented, therefore, is as to the authority of the court in actions of this character to order new parties brought in when in its opinion their presence is necessary to a complete determination of the controversy."

The case of Hellebush v. Blake (Ind.) 21 N. E. 976, holds, in substance, that, in an action appointing a receiver, the fact that the owner of the property, which is within the jurisdiction of the court, is a nonresident of the state does not deprive the court of jurisdiction to appoint the receiver. Also, where notice in an action has been served and the defendant appears and the parties go before the court, the action is pending so as to authorize the court to appoint a receiver, although the defendant's appearance may have been special and the notice of service may have been defective.

In 20 R. C. L. p. 649, sections 33 and 34, the following general rules, among others, are laid down:

"The right to bring in new parties is generally considered as subject to the sound discretion of the court. Royal Ins. Co. v. Miller, 199 U. S. 553; Brown v. Mitchell (N. C.) 9 S. E. 702; Dedrick v. Charrier (N. D.) 108 N. W. 38."

"An action cannot, however, be maintained by adding new parties plaintiff, where the effect of the proposed amendment would be to introduce a new cause of action or defense. * * * "

The time and mode of bringing in new parties seems to differ in the several jurisdictions. No hard and fast rule has ever been laid down by any court.

"The rule has been adopted in a number of courts that new parties cannot be introduced into a cause by a cross-bill. Shields v. Barrow, 15 Law Ed. 158; Patton v. Marshall, 173 Fed. 550, and 26 L. R. A. (N. S.) 127."

"But other courts have frequently taken a different view of the question, and have held that persons may properly be made parties to a suit by cross-bill. 50 A. S. R. 738, 26 L. R. A. (N. S.) 128."

"Under the Codes, while the right to bring in new parties by cross-complaint has been denied, especially when an attempt thereby is made to bring in new issues or to raise questions with respect to which all parties are not interested, it is held that new parties may be brought in by cross-complaint when they are necessary to a complete determination of the controversy. 26 L. R. A. (N. S.) 130; 25 Pac. 407; 59 Pac. 36; and 76 A. S. R. 202."

From an examination of the authorities, it will appear that, in practically all, if not all, of the cases cited there was an objection on behalf of some of the other parties to the action. In no case that we have been referred to did the party himself object to the manner in which he was brought in, solely on the ground that it was on a cross-complaint or by an amendment to the original action or by any other method. So, in the case at bar, Neff was served with summons the same as any other party. He was brought in on cross-complaint, but from the record, by the acquiescence of the court, as well as by all the other parties to the action. If he has an interest in the action, and if he is a proper party to the action, which fact we think is supported by this record, then we are of the opinion that he could not object to the manner in which he was here made a party. We think under the record here presented that Neff was a proper party to this action sufficient to authorize the court to appoint a receiver for the property, including the royalty interest held by Neff.

The next proposition presented by the plaintiff is, in effect, that the receiver is liable, irrespective of his negligence in handling the money, because he did not rightfully come into possession of the royalty money. The assignment is based upon the assumption that the original order is void, and, under our holding on the first assignment, we need not discuss this question.

The third assignment is stated in Neff's brief as follows:

"The act of the receiver in placing the royalty fund in the general assets of the Miners National Bank, where same was lost

by reason of failure of said bank, was contrary to and in disobedience of the order of court whereby he was appointed, and was gross negligence on part of receiver."

We do not think there is any merit to this contention. As we read the order appointing the receiver, there was no direction as to what should be done with the money. Neff contends, however, that the order recites that receiver shall segregate the amounts received as royalties and "shall hold the same in his hands as a fund out of which royalties shall be paid," and that this amounts to an order to actually hold the money and not deposit it in any bank. With this contention, however, we cannot agree. We do not believe the court intended by this order that the receiver should actually hold the money, but that he should handle it like any other business man under like circumstances would handle his own money. The general rule, we think, is stated in 34 Cyc, p. 273, as follows:

"Thus it has been held that, since the general deposit in a bank is a loan, the receiver who has a fund in his possession merely awaiting the termination of the cause cannot part with actual custody by depositing it in a bank otherwise than at his own risk, without some order, leave, or direction of the court. **On the other hand, the rule which seems best supported by authorities is that a receiver may use a bank as a depository, and if he acts with good faith and with ordinary prudence he will not be charged with loss by the subsequent failure of the bank."** (Emphasis ours.)

Under the first part of this general rule, the plaintiff in error cites cases from Georgia and Kentucky holding that a receiver must account for money lost by failure of a bank in which he deposited money without authority. Assuming this to be the rule in Georgia and Kentucky, it is evident from the general rule above cited that the latter part is best supported by the authorities, and to our minds is based upon the better reasoning. We think a receiver may use a bank as a depository if the deposit is made in his name as receiver; and if he acts in good faith and with ordinary prudence, he will not be charged with the loss by a subsequent failure of the bank. This rule, we think, is recognized by our court in the case of In re Clark's Guardianship, 104 Okla. 245, 250 Pac. 891.

In the instant case the evidence supports a finding that the receiver acted with ordinary prudence. He deposited the money in a bank in his name as receiver according to his own testimony, which is not disputed either by the testimony or by the circumstances of the case, and knew nothing about the failing condition of the bank until after it had closed its doors. We think this evidence shows that he acted in good faith and used ordinary prudence, and should not be charged with the loss.

The only other proposition presented by this appeal is whether or not the court had jurisdiction to direct the receiver to pay money to Neff, but owing to our holding as above indicated this question becomes immaterial.

The judgment of the trial court is affirmed.

DIFFENDAFFER, HERR, EAGLETON, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 26 L. R. A. (N. S.) 127, 130; 20 R. C. L. p. 696, 697 R. C. L. Perm. Supp.: p. 4950. (2) anno. 45 L. R. A. (N. S.) 17; 23 R. C. L. p 82. See "Receivers," 34 Cyc. p. 115, n. 67; p. 272, n. 48.