**In re HORSEMAN'S ESTATE.**

No. 21744.   Jan. 23, 1934.

Rehearing Denied Feb. 20, 1934.

Cicero I. Murray, for plaintiff in error.

Yerker E. Taylor and J. S. Garrison, for defendant in error.

WELCH, J. On March 24, 1926, A. C. Bickell was appointed administrator of the estate of Nancy Horseman in the county court of Grady county. The estate, so far as material here, consisted of $1,988.86 on deposit in the Farmers Exchange Bank of Lindsay, and $50 on deposit in a bank at Blanchard. The administrator was then, and had been for about 18 months, the cashier and active manager of the Farmers Exchange Bank. Upon his appointment he transferred said deposits to his credit in that bank. Thirty days after his appointment as such administrator, the said A. C. Bickell participated in a meeting of the board of directors of said bank, at which time it was decided that the bank should go into voluntary liquidation. The bank was thereupon closed and placed in the hands of the State Banking Department for final liquidation. A small percentage payment was made to the depositors, but the closing of the bank, and its inability to pay depositors in full, resulted in the loss of $1,741.40 of the funds of the estate. The question in this case is whether the administrator is responsible or liable to account to the estate for this money.

Our statutes provide as follows:

Section 1327, O. S. 1931. "Every executor or administrator is chargeable in his account with the whole of the estate of the decedent which may come into his possession, at the value of the appraisement contained in the inventory, except as provided in the following sections. * * *"

The following section 1328, O. S. 1931, provides in part:

."He shall not * * * suffer loss by the decrease or destruction, without his fault, of any part of the estate." ·

The administrator in his report admitted having received said money as administrator, but asked or claimed credit for said sum of $1,741.40. Upon a hearing in the county court, that court found as follows:

"The court further finds that the said A. C. Bickell at the time of his appointment as such administrator was the cashier of the Farmers Exchange Bank of Lindsay, Okla., and was in active charge thereof and so remained until the 25th day of April, 1925, at which time said bank was closed and placed in the hands of the Bank Commissioner of the state of Oklahoma; that said administrator knew or by the exercise of ordinary prudence should have known that it was unsafe to deposit in said bank (sic) belonging to said estate and that it was unsafe to allow any money to remain in said bank belonging to said estate, but notwithstanding said knowledge said administrator well knowing that said bank was in a failing condition deposited moneys belonging to said estate in said bank and allowed deposits to remain therein, which sums were lost by the reason thereof to said estate, and that said administrator thereby mismanaged said estate and caused it to suffer a loss for which said administrator is responsible and which said sums should be charged to said administrator."

And the county court charged said sum to the administrator.

On appeal to the district court, that court found as follows:

"The court finds that said administrator has in his hands certain monies belonging to said estate, which were on deposit in the Farmers Exchange Bank of Lindsay, Okla., and were subject to his control; that said bank was at all times under the charge and control of said A. C. Bickell, who was its cashier, that said A. C. Bickell was appointed as the administrator of the estate of Nancy Horseman on the 24th day of March, 1924, and that at that time there was on deposit in said bank, to the credit of Nancy Horseman estate, the sum of $1,988.86 and that immediately after his appointment as such administrator, that said account was transferred on the books of said bank to his credit as such administrator and that he also drew the sum of $50 out of the First National Bank at Blanchard, Okla., and deposited that sum in said account in said bank.

"That for a period of 18 months prior to his appointment as such administrator, that the said A. C. Bickell was the cashier and in active management and control of said Farmers Exchange Bank of Lindsay, Okla., and knew its condition, or by the exercise of ordinary diligence ascertained the same:

· "That said A. C. Bickell by allowing sums to remain on deposit in said bank was careless and negligent, and through his carelessness and negligence said money was lost to said estate and that said A. C. Bickell is therefore liable to said estate for said moneys so lost."

And the district court charged said sum to the administrator.

On appeal to this court the administrator, as plaintiff in error, now contends that he is entitled to be relieved of this charge by virtue of the quoted portion of section 1328, supra, but the record discloses that he failed to show that the loss to the estate occurred "without his fault." It is only in cases where the administrator suffers a loss of the estate of the decedent, **without his fault,** that he is relieved of liability for the

loss. Otherwise it is the plain duty of an administrator to account for all of the estate coming into his hands.

The cause was submitted to the trial court upon an agreed statement of fact without any further evidence. That agreed statement showed in substance the appointment of the administrator; that the administrator for about a year and a half had been and was the cashier and active manager of the Farmers Exchange Bank of Lindsay; that upon his appointment he transferred to his own credit, as administrator, the money theretofore in that bank to the credit of the decedent, and that he removed the balance to the decedent's credit in the bank at Blanchard and placed it also on deposit in his own bank to his credit as administrator; that the administrator at all times had access to the books and accounts of the bank, and that 30 days after his appointment as administrator he participated with the other directors in a meeting in which the voluntary liquidation of the bank was decided upon, and that the bank is still in the hands of the State Banking Department. And it was specifically stipulated further that the administrator's report should be approved as filed, that is, giving the administrator credit for the sum lost by the bank failure, or that the administrator should be charged with the money lost by being on deposit in that bank when it failed, as the court should determine.

This stipulation disclosed that the loss had occurred and the manner of the loss, that is, by reason of having been deposited in a bank which subsequently failed, but no showing whatever was made that the loss occurred without fault of the administrator. Under the statute it was necessary for the administrator to show that he was without fault before he was entitled to be relieved of liability for loss of the moneys of the estate.

In Montana the statutory provision, section 10283, Rev. Codes 1921, is identical with the above-quoted portion of section 1328, O. S. 1931. The Supreme Court of Montana, in Re Connolly's Estate, 235 P. 408, considered the liability of an executor for an uncollected debt due the decedent. That court held that the burden is on an executor to show facts from which the court can say that loss was not suffered because of his failure to collect. In the body of the opinion that court said:

"* * * With reference to any indebtedness owing to a decedent, it is the executor's or administrator's duty to collect when it becomes due, and if he fails to do what he is bound to do, and the estate suffers loss thereby, he is liable for such loss. Being chargeable with the debt as inventoried, and being in duty bound to inventory it, the burden is upon the representative who seeks to escape the liability to turn over the amount thereof in cash, to show that his inability to do so is not the result of his own negligence; and, by reason of the fiduciary relationship which exists in such a case, the representative should be required to make a clear showing that his relationship has not caused the loss. * * *"

And further in the body of the opinion that court said:

"Where such showing of absence of fault is made, however, the representative is entitled to a finding to that effect. * * *"

Upon a subsequent appeal of the same case the Montana Supreme Court held:

"Burden rests on executor to escape liability to show that his failure to collect amount of joint and individual indebtedness to decedent's estate was not the result of his own neglect." In Re Connolly's Estate, 257 P. 418.

There the executor was held liable for certain losses, it being observed from the record that he had not discharged this burden.

At first glance this last-cited case might be thought to sustain the contention of the administrator in the case at bar, inasmuch as in the second appeal of the Connolly Case there was also considered a loss of money caused by failure of the depository bank in which one of the executors was cashier, and it was held under the facts in that case that the executor was not liable for such loss of funds. However, in the Connolly Case the executor made an affirmative showing by positive testimony, which was not contradicted, that he was without any fault or negligence in connection with that loss, while no such affirmative showing is made in the instant case.

It has been held that a cashier of a bank who, as administrator, deposits trust funds in his own failing bank, is liable therefor. In the Matter of the Estate of Samuel O. Scudder, Dec'd, 21 Misc. Rep. 179, 47 N. Y. S. 101.

Both parties in this case cite and seek to rely on the case of Norwood v. Harness, 98 Ind. 134. In that case there was a loss of funds by failure of the bank in which the administrator continued a deposit, and the court relieved the administrator of liability. However, in that case the administrator made a very strong affirmative showing that he acted prudently, and in good faith be-

lieved the bank to be safe. In that case the Supreme Court of Indiana held, in substance, that the administrator had the right to deposit his trust money in a bank, but that he must exercise ordinary prudence and diligence. In that case the administrator was a farmer living some miles in the country, and he established the fact that he made inquiry and received satisfactory information, and had good reason to believe, and did in good faith believe, the bank to be safe when he transferred the deposits to his own name as administrator, and that when the loss occurred by reason of the failure of that bank a year later, he, as administrator, was without any fault or negligence.

In Germania Safety Vault & Trust Co. v. Driskell (Ky.) 66 S. W. 610, the administrator was a trust company. The president of the trust company was also president of the bank in which the administrator deposited moneys of the estate, which were lost by the subsequent failure of the bank. In that case the Supreme Court of Kentucky held the administrator to be liable, the facts disclosing that the administrator was not without fault or negligence in connection with the loss.

In the case at bar the administrator insists that he had the right, and that it was his duty, to deposit the funds of the estate in some bank. We agree to that, but that does not mean that he could safely deposit such funds in any bank. It does mean that it was his duty to use ordinary care and prudence, and to deposit the money in a safe bank, or in a bank which he in all good faith believed to be safe, so that in case any loss to the estate occurred by failure of the bank he could present his affirmative showing that the loss was "without his fault," and thereby bring himself within the provisions of section 1328, O. S. 1931, which would relieve him of liability for such loss.

In Neff v. Harmon, 145 Okla. 114, 291 P. 518, this court considered the liability of a receiver who deposited money in a bank which failed with resultant loss of funds. This court announced the rule as follows by syllabus, par. No. 2:

"A receiver may use a bank as a depository, if the deposit is made in his name as receiver, and, if said receiver acts in good faith and with ordinary prudence, he will not be charged with loss by subsequent failure of the bank."

This court there sustained the judgment of the trial court relieving the receiver of liability, and observed in the body of the opinion that the receiver had shown by testimony, which had not been disputed either by evidence or by circumstances of the case, that he acted prudently and in good faith and without knowledge of any weakness of the bank.

We have seen from the foregoing authorities, and it is surely supported by sound reasoning, that it is not in every case in which such funds are lost by bank failure that the administrators would be liable. Upon the other hand, it is not every such case in which the administrator would be relieved of liability. Each case in which such loss occurs must be determined upon the facts and circumstances peculiar to that case, and the test in each case must be whether the administrator, acting in good faith, was reasonably prudent and diligent. We think the administrator must be reasonably prudent and diligent in selecting the depository of the money of the estate, just as he must be reasonably diligent and prudent in caring for any and all of the property of the estate. No authority is cited to the contrary. If property or money received by one as administrator is lost so that he cannot deliver it or pay it over, then, of course, he would request credit therefor, which he would only be entitled to request upon the theory that the loss had occurred "without his fault." In connection with his showing that the loss has occurred, he must certainly make some affirmative showing from which the court may say that the loss occurred "without his fault," else he is not entitled to credit therefor.

The Supreme Court of Oregon, in the case of In re Roach's Estate, 92 P. 118, held that, "where an executor's final account is properly challenged, the burden of proving the truth of an item or the reasonableness of a credit objected to is on him." In the instant case there is no contention that this item of the report of the administrator was not properly challenged.

The law does not require an administrator to be an absolute guarantor or an insurer of the property or money of the estate, but the law does and must require of the administrator that he be at least ordinarily prudent and diligent. The law requires the administrator to account for all of the estate coming into his hands, not, however, without making ample provision to relieve him of liability when loss occurs "without his fault," as is shown by the foregoing provisions of our statutes.

Both on precedent and on our construction of the statutes of this state, we are of the opinion that the sound rule is that

which holds the administrator liable for all of the estate coming into his hands, subject to the provision that he may be relieved of liability upon a showing that any portion of the estate was lost "without his fault." In our opinion, the burden is on the representative or the administrator who receives property or money of the estate, and who thereafter seeks exoneration for loss on the ground that such loss occurred without his own fault or neglect, to present a showing that such is true.

In the instant case it was evidently the conclusion of the trial court that the administrator had made no such showing. The administrator did show that the loss occurred by reason of the failure of the bank, but made no affirmative showing that he was without fault or negligence, and the conclusion of the trial court that he had not shown himself to be entitled to be relieved of liability must be sustained.

The judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.