## In re SPANN.

No. 5153.   Opinion Filed September 21, 1915.

(152 Pac. 68.)

1.   **CONTRACTS—Parties in Confidential Relation.**  Whenever there exists between parties confidence on the one hand, and influence on the other, from whatever cause they may spring, equity requires in all dealings between them the highest degree of good faith on the part of him in whom the confidence is reposed.

2.   **EXECUTORS AND ADMINISTRATORS—Funds of Estate—Use by Executor—Liability—Burden of Proof.**  An executor or administrator has no right to speculate with or use the funds of an estate in his own business; and, if he does so, he and his bondsmen will be liable for any loss occurring, unless such use is made with the consent of or by agreement with those entitled to the estate; and, where he relies upon such consent as a defense, he must show that he has acted in entire good faith, and that he obtained such assent upon full and fair representation and information communicated to them of all the facts and circumstances attending the risk to the funds, and of the proposed investment.

3.   **SAME.**  He must be guilty of no fraud, falsehood, or deceit in obtaining such consent, and the burden of proof is upon him to show this, by a clear preponderance of the evidence, and in no other way can he be protected in deviating from the line of his fiduciary duty.

(Syllabus by Robberts, C.)

*Error from District Court, Rogers County;*
*T. L. Brown, Judge.*

In the matter of the final report of G. W. Spann, executor of the estate of J. E. Prather, deceased. Objections were filed to the report by Amanda. Moore, and from adverse findings of the county court, she appealed to the district court. From the judgment rendered by the district court, the executor brings error. Modified and affirmed.

*C. S. Wortman,* for plaintiff in error.

*John Q. Adams, Richard H. Wills,* and *H. Jennings,* for defendant in error.

Opinion by ROBBERTS, C. The record in this case shows that John E. Prather was a Cherokee Indian. At the time of his death, which occurred on the 26th day of February, 1907, he was the owner of an Indian allotment in that part of the Cherokee Nation which, upon statehood, became Rogers county. Prior to his death he made a will in which he bequeathed his allotment to his wife, Amanda Prather, who was afterwards married to a man by the name of Moore. The will was duly probated in the proper court of the Indian Territory, and G. W. Spann, who is the father of Amanda, was appointed executor of said will.

Before her marriage to Mr. Moore, Amanda mortgaged the allotment for the sum of $700, and the proceeds of said mortgage were deposited in a bank, in the names of G. W. Spann and Amanda Prather, and checked out by said parties; both signing the checks. After the death of her husband, Amanda resided with her father, until her marriage to Moore, which, it appears, was in October, 1910. No report by the executor or other pro-

ceedings were had in the estate until the 14th day of December, 1910, at which time the executor filed his final report, which showed a balance due from the estate to the executor. The report made no mention of the money obtained from the mortgage of the allotment. To this report, Mrs. Moore filed objections, claiming, among other things, that the executor had "induced her to mortgage her allotment, and that the money was turned over to him as executor, and that he still had possession of said money with the exception of $139, that said mortgage is still in force and effect on said allotment, and that said executor refuses to account for said money, or make any mention of the same in his report"; and she prayed that said funds be charged to said executor, and that he be held on his bond for said money. Some other minor matters are mentioned in the objections, but they seem to have been abandoned, and the controversy hinges entirely upon the item of the $700 obtained by the mortgage. A hearing on said objections was had before the county court, and it was there held that the executor received said money, but did not receive it in his official capacity, and therefore was not liable therefor as such executor. It was finally determined, however, that the executor had in his possession the sum of $54, and was indebted to the estate in that amount, for which he and his bondsmen were held liable.

From the findings and order of the county court Mrs. Moore appealed to the district court. Objections to the appeal bond, as well as to the notice of appeal, and other interlocutory motions, were lodged questioning the appeal from the county court; but, as they do not appear to be argued or otherwise noticed in the briefs of plaintiff in error, we will not consider them here. In the district

court Mrs. Moore amended her objections to the report of the executor by charging, in substance, that her father, the executor, by fraud and intimidation, coerced and compelled her to execute said mortgage, and that he did so for the purpose of obtaining the money for his own use and benefit, and that he did obtain all of the proceeds of said mortgage, except $139, and kept and appropriated the same to his own use and benefit, and was still in possession of the same, and thereby indebted to the estate therefor.

Counsel for the executor objected to the amendment on the ground that the question of "coercion and intimidation" had not been presented or made an issue in the county court, and therefore could not be raised or considered upon appeal in the district court. We are of the opinion that the contention of counsel in that behalf cannot be sustained, for the reason that this is not an ordinary action, or proceeding on appeal, and that the claim or defense of the contestant has not been materially changed. In the county court she charged that she had been induced by her father, who was the executor of her estate, to mortgage the land, against her personal judgment and wishes. In the district court her objections to the report of the executor were that she was induced by threats, intimidation, and coercion to execute the mortgage against her will. They are all objections to the same report—of the same executor, of the same items, and of the same general nature, only a little more specific, definite, and certain. There is no material change as to the issue.

We do not want to be understood as resting the decision of this case upon the question of whether the defendant in error was coerced into executing the mort-

gage. To our mind that is immaterial. The real issue
in the case is whether the plaintiff in error received the
proceeds of the mortgage, or any part of them, by virtue of
his office, as executor. The case was tried in the district
court upon that issue. The testimony was conflicting, but
the jury found that:

"George W. Spann, as executor of the estate of John
E. Prather, deceased, is indebted to the appellant,
Amanda Moore, in the sum of $561, including the mort-
gage."

That is the exact amount of the $700 mortgage, less
the $139 which Mrs. Moore admits she received.

From that verdict, and the judgment rendered
thereon, the executor appeals to this court. While there
is possibly some little conflict of testimony, as to the exact
amount of this money received by the executor and the
circumstances under which he received it, the finding of
the jury will not be disturbed, and in fact we feel that it
is fully sustained by the evidence.

This brings us to the legal question as to the liability
of the executor therefor.

We gather from the record in the case that, at the
time of the death of her husband, Mrs. Moore was about
18 years of age; that she went immediately, after his
death, to the home of her father, the executor of her es-
tate, and became a member of his family; that she had
had little, if any, experience in business matters, and but
little education. She testified that her father told her he
was receiving the funds as the executor of the estate, and
that his bondsmen as such executor were liable for the
money. Whether he coerced her or not, he was a party
to having the proceeds of the mortgage deposited in the
bank jointly in the names of his daughter and himself,

which is a very strong circumstance, corroborating the fact that he was leading her to believe, and did lead her to believe, that he was receiving the funds in his capacity as such executor. If not, why did he cause the money to be deposited in the names of himself and daughter? We do not overlook the fact that he denies a large part of this testimony, but the court and jury found against him, and in favor of his daughter. We will not disturb that finding, but will adopt it and proceed upon the theory that he did induce her to deposit the money in his name, and that she consented thereto on the ground that he told her, and that she believed he was receiving it as executor, and that his bondsmen were liable therefor.

The executor does not deny, but on the contrary admits, that he appropriated a large part of this money to his own use. His only defense is that he borrowed it, or rather just took it, and used it, and that it did not belong to the estate, and therefore he is not liable for it as executor. It is admitted that he occupied a double relation of confidence with Mrs. Moore—not only as executor of her estate, but as her father.

As said in *Hogan v. Leeper*, 37 Okla. 655, 133 Pac. 190, 47 L. R. A. (N. S.) 475:

" 'Whenever there exists between parties confidence on the one hand and influence on the other, from whatever cause they may spring, equity requires in all dealings between them the highest degree of good faith on the part of him in whom the confidence is reposed. If a conveyance is executed by the other in his favor, the burden rests upon him to prove that it was not procured by means of such confidence and influence. It is his duty, before accepting the conveyance, to see that the grantor has disinterested advice and full information.' *McClure v. Lewis*, 72 Mo. 314. See, also, *Parker v. Parker*, 45

N. J. Eq. 224, 16 Atl. 537; *Snyder v. Snyder,* 131 Mich. 658, 92 N. W. 353."

As executor he was bound to explain to her fully all the facts and circumstances concerning his use of her money. In fact, under the circumstances as detailed by the witnesses, he had no legal right whatever to, and should not have used, her money. The rule is well stated in *Ward v. Tinkham,* 65 Mich. 695, 32 N. W. 901, in the following language:

"An executor or administrator has no right to speculate with or use the funds of the estate in his own business; and, if he does so, he and his bondsmen will be liable for any loss occurring, unless such use is made with the consent of or by agreement with those entitled to the estate; and, where he relies upon such consent as a defense, he must show that he acted in entire good faith, and that he obtained such assent upon full and fair representations and information communicated to them of all the facts and circumstances attending the risk to the fund, and of the proposed investment."

The court further says:

"He must be guilty of no fraud, falsehood, or deceit in obtaining such consent, and the burden of proof is upon him to show this, and in no other way can he be protected in deviating from the line of his fiduciary duty."

We believe the law just quoted is applicable here, and that, under facts and circumstances as shown by the evidence, it became the duty of the executor to prove by a preponderance of the evidence that he had accounted for all money that came into his hands as such, and, upon failure to do so, it was the duty of the court to enter an order directing him to account for such funds. The

facts were passed upon by the jury, and the verdict approved by that court, and we see no reason why we should disturb the findings and judgment.

The case should be affirmed, but modified by directing the lower court to require the executor to account for the proceeds of said mortgage as such executor.

By the Court: It is so ordered.