**FOREMAN v. HENRY.**

No. 11467—Opinion Filed Nov. 21, 1922.

(Syllabus.)

1. **Executors and Administrators—Contract Between Executor and Devisee—Validity.**

Where an executrix of an estate enters into an agreement with one entitled to an interest in such estate and takes from such person a quitclaim deed to real estate bequeathed to such person by the will of the testator, and where such executrix relies upon such agreement and quitclaim deed as a defense, she must show that she acts in entire good faith and that she obtained such agreement and deed upon full and fair representation and information communicated to such beneficiaries of all of the facts and circums'ances, and that she was guilty of no fraud, falsehood, or deceit in obtaining such agreement and deed; and the burden of proof is upon such executrix to show this, and in no way can she be protected in deviating from the line of fiduciary relation.

2. **Appeal and Error—Right to Complain—Favorable Instruction.**

Though an instruction be erroneous, if such error consists in being more favorable to the plaintiff in error than he was entitled to, the same was error without injury and will not constitute a cause for reversal.

3. **Sufficiency of Evidence.**

The evidence examined, and found sufficient to sustain the verdict of jury, which was in itself not excessive, and there being no prejudicial error found in the record, the judgment of the trial court is affirmed.

Error from District Court, Sequoyah County; E. B. Arnold, Judge.

Action by Charlie Willie Henry against Fannie Bell Foreman to recover interest in estate. Judgment for plaintiff, and defendant brings error. Affirmed.

E. M. Frye & Roy Frye, for plaintiff in error.

L. C. McNabb and W. B. Wall, for defendant in error.

JOHNSON. J. This action was originally commenced by Charlie Willie Henry, defendant in error, against Fanny Bell Foreman, plaintiff in error. The amended petition upon which the cause was tried was filed in the district court of Sequoyah county on the 11th day of May, 1919.

The facts as shown by the testimony were that Fannie Bell Foreman was the second wife of Hiram V. Lender, and stepmother of the defendant in error, Mrs. Henry's mother having died when she was about five years of age, and the plaintiff in error having become her stepmother when she was about six or seven years of age. Hiram V. Lender had long been ill before his death, and his wife attended to most of the business for some time before his death. About the time that the defendant in error became of age, she and her first husband had separated; and, for fear of the child being swindled out of her allotment, Hiram V. Lender had her to execute a deed to her allotment conveying the same to him, and he thereafter holding the same and managing it in trust for her. He made a will in which he bequeathed his own allotment to his wife, plaintiff in error; that allotment was incumbered by a mortgage of $650; he also gave her some lots and houses in the town of Gore, Okla.; he then bequeathed to the defendant in error her own allotment that she had deeded to him in trust and gave her a couple of lots in the town of Gore; he then made certain provisions for his son, who was a minor at that time and who was a minor at the time

of this trial. After giving each the specific property that he wanted them to have, he then requested that all other property that he might possess be divided between them, share and share alike. He gave plaintiff in error his entire personal allotment; he gave his minor son the home that he lived in in the town of Gore; to the defendant in error he gave nothing as a separate bequest except her own and individual allotment that had been previously deeded to him to hold as a protection to the defendant in error. The only property that she gained by the will was what she shared alike with the other two, and that was the allotment of one of his deceased children which he had inherited and some property in the town of Gore. Plaintiff in error was made executrix of the will without bond, and attended upon such duties. The defendant in error testified that the executrix represented to her that there was a large amount of debts against the estate and that she had a right to sell all the property for the payment of these debts if she desired, but that if she would take her own personal allotment and claim nothing else against the estate, she would turn that over to her then and there.

The plaintiff in error's final account as executrix showed that she had received as moneys belonging to said estate the sum of $222.35, and had paid the claims against the estate amounting in the aggregate to the sum of $423.35, or $201 in excess of the receipts. Such final account further showed that there was a mortgage against the allotment of the deceased which was willed to the plaintiff in error amounting to $650. And she asked for an allowance for her services as such executrix in the sum of $100, and asked that the real estate be distributed among the beneficiaries in the will according to the terms thereof.

The record discloses that the $201 was the only amount she had to pay on the indebtedness of the estate, and that the rents of the houses in the town of Gore and the lands belonging to the estate are adequate to take care of said amount, as well as to compensate her for her services as executrix.

The testimony showed the value of the plaintiff's share in the land, which she quitclaimed to the defendant, to be from $50 to $60 per acre at the time the contract was made; that there was 78 acres of the land, and the plaintiff's interest therein was an undivided one-third under the will, which, taking the average price of $55, would make the plaintiff's interest worth

$1,430. And $1,000 was the amount allowed her by the verdict of the jury.

The plaintiff conveyed her interest in the land by quitclaim deed, for which she received no consideration. And if she had been charged with her pro rata share of the indebtedness of $201 against the estate, her share would have amounted to $66.66 2-3.

The was no controversy about the terms of the will, or the validity of any of the provisions thereof. The record discloses that the parties had entered into a written contract the procurement of which the plaintiff alleged in her amended petition was obtained through the fraudulent representation of the defendant. The contract was as follows:

"This contract, made and entered into on this the 13th day of September, 1910, by and between Fannie Belle Linder, of Gore, Okla. party of the first part, and Charlie Willie Henry, of Gore, Okla. party of the second part.

"Witnesseth: That for and in consideration of the agreement of the party of the first part to assume and pay all outstanding indebtedness against the estate of Hiram V. Linder, deceased, and to hold the said party of the second part blameless on account of same, and to also protect that portion of the estate devised by the said Hiram V. Linder in his last will and testament to the said party of the second part, by the payment of all of the indebtedness of the estate of whatsoever kind out of the remainder of said estate, the said party of the second part has this day made out, executed and delivered to the said party of the first part, her certain quitclaim deed to her interest in the lands heretofore alloted to Hiram V. Linder, deceased, as a new-born citizen of the Cherokee Nation.

"It is further agreed by and between the parties hereto, that if the said party of the first part should, at any time, fail or refuse to fully comply with the conditions of this contract, that the party of the second part shall thereupon be entitled to recover from the party of the first part, all amounts that she may have to pay on account of the indebtedness of the estate of the said Hiram V. Linder, deceased, out of that portion of the estate devised to her in his last will and testament, and that if said amounts, if any, be not paid on demand, they shall at once become due, and the statute of limitation shall not run until that time."

Concerning the execution of this contract, the plaintiff alleged in her amended petition as follows:

"IV. That defendant was the wife of Hiram V. Linder, deceased, and the stepmother of this plaintiff; that plaintiff had

the same love and affection for her and the same confidence in her as if she had been her own mother; and that plaintiff, being unsophisticated and utterly inexperienced in business matters, and unqestioningly trusting defendant to guide and direct her, surrendered her will and judgment in such matters entirely to defendant, and depended upon her solely for information concerning the condition of her father's estate and knew nothing of the kind. number or amount of debts against said estate except what defendant told her.

"V. That, because of the long illness of said Hiram V. Linder before his death, defendant had had the management and control of his estate for a long period of time before she assumed the duties of executrix of his estate and was well acquainted with its condition before she assumed her duties as such executrix.

"VI. That almost immediately after her appointment as such executrix aforesaid, defendant began to lay plots and plans to defraud the legatees and devisees of Hiram V. Linder's estate, and more especially this plaintiff, out of property due them from the estate of the said Hiram V. Linder; that in furtherance of such fraudulent intention, defendant knowingly, willfully, wrongfully. and fraudulently represented to plaintiff that said estate was greatly and overwhelmingly in debt, and that. unless some means could be devised by the heirs, the whole of said estate would have to be sold at a sacrifice to satisfy the creditors.

"VII. That on or about the 13th day of September, 1910, defendant more positively than heretofore reiterated her assertions and representations about the debts of the estate of said Hiram V. Linder. deceased, strongly impressing on plaintiff the urgent need of immediate action by the devisees of said estate towards the settlement of said debts, representing to plaintiff that plaintiff would surely lose all benefits provided for her under the will of the said Hiram V. Linder. deceased, unless such action was taken, and proposed to plaintiff; that, if plaintiff would quitclaim her undivided interest in the above described lands to defendant, defendant would preserve plaintiff blameless against all outstanding indebtedness against said estate and would protect that portion of the estate of said Hiram V. Linder devised to plaintiff against said indebtedness; and that thereupon plaintiff and defendant entered into a contract embodying within its terms the proposition of defendant as aforesaid, a copy of which is hereto attached marked 'Exhibit A,' and made a part hereof.

"VIII. That said representations of defendant were grossly false and fraudulent, and that there were ample funds in each and notes and in the rents and profits from said estate to pay all of the debts against said estate; that defendant well knew said representations were false when she made them; that defendant made said representations with the intention that plaintiff should be misled. deceived, and imposed upon to her injury and damage and that she should rely and act upon them; that plaintiff, on account of the faith and confidence she had in defendant both as her mother and the executrix of her father's estate, and unduly influenced by the will and importunity of defendant, and deceived by the false and fraudulent representations of defendant. believed said representations were true and that defendant had no motive except the protection of the best interests of the said estate and devisees thereof, acted upon the suggestions of defendant and executed the contract aforesaid and delivered to the defendant her quitclaim deed conveying to defendant all of plaintiff's interest in the above described lands; that had it not been for the undue influence of defendant over plaintiff, and had it not been for the belief of plaintiff in the truth of the representations of defendant, and had plaintiff not implicitly relied on the good faith of defendant. she would not have entered into said contract nor executed her quitclaim deed to her interest in the premises above described; and that plaintiff has been damaged by the false and fraudulent representations and the undue influence of defendant, the value of the interest in said land, in the sum of $2,000.

"IX. That plaintiff discovered that said representations were false on or about the 1st day of January, 1918.

"Wherefore, premises considered, plaintiff prays judgment against defendant for the value of her interest in the lands conveyed, amounting to $2,000. and for rents and profits of her interest in said lands from the 13th day of September, 1910, to the date of rendition of judgment in this cause, and for all costs of this suit."

The cause was tried to the court and jury, which resulted in a verdict and judgment in favor of the plaintiff in the sum of $1,000, to reverse which this proceeding in error was regularly commenced.

The petition in error contains 16 specifications of error, only three of which are argued by counsel in their brief, which were as follows:

"(1) The court erred in overruling motion of plaintiff in error for a new trial."

"(13) The court erred in rendering judgment upon said verdict for the reason that said verdict of the jury is contrary to the law in this case."

"(14) The court erred in rendering judgment on the verdict in this case for the reason that said verdict of the jury is contrary

to both the law and the evidence in this case."

In arguing the foregoing specifications of error, counsel first complain of paragraph two of the court's instructions to the jury, which is as follows:

"You are instructed that if you find from the testimony in this case that the defendant falsely and fraudulently represented to the plaintiff that there were a large number of debts against said estate and that the allotment of the plaintiff, which was willed to her, was likely to be sold for the payment of said debts, that the plaintiff relied upon the said representations, and if you further find that said representations were false and fraudulent and that by reason thereof the plaintiff entered into the contract in question and executed to the defendant a deed to her interest in the land in question, then the plaintiff would be entitled to recover from the defendant the value of her interest in said land at the time of said conveyance, not to exceed the amount sued for herein."

Which they say fails to state all the essential elements of fraud or deceit as laid down by this court. A correct statement of which is found in the fourth paragraph of the syllabus in the case of Wingate et al. v. Render, 58 Okla. 656, 160 Pac. 614. wherein the court said:

"To constitute actionable fraud it must be made to appear; (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it would be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) that all these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery."

The rule governing actionable fraud in cases of confidential and fiduciary relations is the same as stated in the Render Case, supra, but the burden of showing the facts shifts to the defendant, as stated in 12 R. C. L., page 5, to wit:

"Constructive fraud often exists where the parties to a contract have a special, confidential, or fiduciary relation which affords the power and means to one to have undue advantage of, or exercise undue influence over the other. A transaction between persons so situated is watched with extreme jealousy and solicitude; and if there is found the smallest or slightest trace of undue influence or unfair advantage, redress will be given to the injured parties. Where such relation exists, it is the duty of the person in whom confidence is reposed to exercise the utmost good faith in the transaction and to refrain from abusing such confidence by obtaining any advantage to himself at the expense of the confiding party. He will not be permitted to retain the benefit and the transaction will be set aside even though it could not have been impeached had not such relation existed. Where unconscionable advantage was obtained by misrepresentation. concealment, or suppression of material facts, artifice, or undue influence, the existence of the relation raises a presumption of fraud. It is broadly declared that this principle applies to every case where influence is acquired or abused, or where confidence is reposed and betrayed, from whatever cause such confidence or influence springs."

In volume 11, R. C. L. page 6, we find these words:

"When an administrator stands in the place and is regarded as representative of the deceased person for the purpose of settling his business affairs and distributing his estate in realty, he serves in a dual capacity, and in addition to standing as the personal representative of the deceased, he occupies the position of trustee for the persons beneficially interested in the estate."

The true rule of the law in cases of this kind when a confidential and fiduciary relation exists has been held by our court by an unbroken line of decisions to be that if the party in whom the trust and confidence is reposed has made a deal, or transaction, with the one who reposes the confidence in him, it is not absolutely void because of this relation, but the burden is upon the one in whom confidence is reposed to show by a clear preponderance of the testimony that no undue advantage was taken, and not only that, but that no advantage was actually gained by the transaction. Our court passed on this question in a case (In re Spann, 51 Okla. 309, 152 Pac. 68), quoting with approval the case of Hogan v. Leper, 37 Okla. 655, 133 Pac. 190, 47 L. R. A. (N. S.) 475, where it is said:

"Whenever there exists between parties confidence on the one hand and influence on the other, from whatever cause it may spring, equity requires in all dealings between them the highest degree of good faith on the part of him in whom the confidence is reposed. If a conveyance is executed by the other in his favor, the burden rests upon him to prove that it was not procured by means of such confidence and influence. It is his duty, before accepting the conveyance, to see that the grantor has disinterested advice and full information." (See McClure v. Louis, 72 Mo. 314; Parker v. Parker, 45 N. J. Eq. 224, 16 Atl. 537; Snyder v.

Snyder, 131 Mich. 658, 92 N. W. 353.)

This court also quotes with approval Ward v. Tinkham (Mich.) 32 N. W. 9.., in the following language:

"An executor or administrator has no right to speculate with or use the funds of the estate in his own business, and, if he does, he and his bondsmen will be liable for any loss occurring unless such use is made with the consent of, or by agreement with those entitled to the estate; and, when he relies upon such consent as a defense, he must show that he acted in entire good faith, and that he obtained such assent upon full and fair representation and information communicated to them of all the facts and circumstances attending the risk to the funds, and of the proposed investment."

The court further says:

"He must be guilty of no fraud, falsehood, or deceit in obtaining such consent, and the burden of proof is upon him to show this, and in no other way can he be protected in deviating from the line of fiduciary relation."

In the case of Thomas v. Thomas, 27 Okla. 784, 109 Pac. 825, the rule is stated to be:

"In consequence, thereof, the rule is thoroughly established that, whenever such relationship exists, undue influence, or rather the ability to exercise undue influence, is implied by virtue thereof; and while neither equity nor law denies the possibility of valid transaction between the parties, yet whenever one of the parties obtains a possible benefit from the mutual transaction, equity raises the presumption against its validity and casts upon the party asserting it the burden of proving affirmatively his compliance with the equitable requisites to thereby overcome the presumption; and the court will not allow any transaction between such parties to stand when assailed, unless there has been the fullest and fairest explanation and communication between them, and absolute good faith and fairness in the party who seeks to establish the contract with the person so trusting him."

Then the court quotes Pomeroy on Equity, secs. 955, 956:

" 'The principle applies to every case where influence is acquired and abused, where confidence is reposed and betrayed:' Smith v. Kaye, 7 H. L. C. 779, Wald's Pollock on Contracts (3rd Ed.) 600."

And then cites a long line of decisions supporting that rule, some of which are as follows:    Perry on Trust (4th Ed.) vol 1, sec. 137; 2nd Pomeroy's Equity (2nd Ed.) sec. 956, page 1378; 1 Story's Eq. Juris.

(13th Ed.) sec. 218; Darlington's Appeal, 86 Pa. 512, 27 Am. Rep. 726; 83 Am. Dec. 593; 21 Pac. 1022; 24 Pac. 1083, 11 L. R. A. 65; 98 Am. St. Rep. 180.

The record discloses, as we have seen, that the defendant was not only the executrix of the will of the deceased, father of the plaintiff, and, as such, administrated his estate, but was the stepmother of the plaintiff from the time that she was about five years of age.    Concerning this relation it is said in 30 R. C. L., page 585:

"The term 'parent,' as will more fully appear in later paragraphs, refers primarily to the father, but sometimes to the mother, or (under modern statutes) to the two jointly.    The step - parents, grandparents, and other relatives who may take a child into their home and care for it as if it were their own can hardly be said to come within the scope of the term 'parent,' though they are said to stand in loco parentis, and are often held to have assumed quasi parental obligations and acquired quasi parental rights."

20 R. C. L., page 593, states as follows:
"One who has been in loco parentis to a child is under the same fiduciary relationship, and under the same burden of proving the fairness of a transaction which took place between them immediately after the child's majority, as an actual parent."

The above rule is supported in the Supreme Court of Ohio in the case of Berkmeyer v. Kellerman, 32 Ohio, 239; and by the Supreme Court of Illinois in the case of Freeman v. Hartman, 45 Ill. 57.

The paragraph of the court's instructions, supra, was preceded by paragraph 1, which told the jury the burden of proof was upon the plaintiff.    As we have seen, this was error; but the instructions being more favorable to the defendant than she was entitled to, she is not in a position to complain here.    Harding v. Gillett, 25 Okla. 199, 107 Pac. 665; C., R. I. & P. Ry. Co. v. Johnson, 25 Okla. 760, 107 Pac. 622; Terrapin v. Barker, 26 Okla. 93, 109 Pac. 931.

The paragraphs of the instructions, 3 to 9, inclusive, stated the law of the case with substantial fairness and accuracy, and submitted to the jury both theories, that of plaintiff and defendant as made by the pleadings and the evidence.    And we find that there was ample testimony in the record to sustain the verdict of the jury in the amount thereof, and that the specifications of error in the plaintiff in error's petition that the verdict and judgment are not sustained by the law and the evidence are without merit.

The judgment of the trial court is, therefore, affirmed.

KANE, MILLER, KENNAMER, and NICHOLSON, JJ., concur.