In the Matter of the ESTATE OF Edward E. BARTLETT, Deceased.

H.I. BARTLETT, Appellant,

v.

The AMERICAN NATIONAL BANK AND TRUST COMPANY OF SAPULPA, Oklahoma, as Successor Administrator with Will Annexed of the Estate of Edward E. Bartlett, Deceased, Appellee.

In the Matter of the ESTATE OF Edward E. BARTLETT, Deceased.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF SAPULPA, Oklahoma, as Successor Administrator with Will Annexed of the Estate of Edward E. Bartlett, Deceased, and as Conservator of the Estate of Helen Turner Bartlett, Counter-appellant,

v.

H.I. BARTLETT, Administrator with Will Annexed of the Estate of Edward E. Bartlett, Deceased, Counter-appellee.

Nos. 58704, 58730.

Supreme Court of Oklahoma.

March 20, 1984.

Rehearing Denied May 11, 1984.

As corrected May 11, 1984.

Sam T. Allen, III, Loeffler & Allen, Sapulpa, for appellant and counter-appellee.

Maurice E. Lampton, Sapulpa, W. Kirk Clausing, Tulsa, for appellee and counter-appellant.

OPALA, Justice:

Four issues are presented for decision: (1) Did the trial court err in refusing to surcharge the administrator for losses incurred by the estate from unauthorized loans of estate funds? (2) Was the administrator liable for losses to the estate caused by his failure timely to pay estate taxes in a foreign jurisdiction? (3) Did the trial court err in reducing the administrator's statutory compensation without ascertaining the value of the services he had rendered? and (4) Did the trial court err in basing its denial of additional attorney's fees on the misperformance of the personal representative during the administration of the estate? We answer the first question in the negative and the last three in the affirmative.

This litigation was occasioned by a dispute between a co-administrator and the successor administrator of an estate. The former, H.I. Bartlett [Bartlett], is interrelated with the testator and the estate in several respects: (1) he is a nephew of the testator, (2) with the testator's widow he served as a co-representative of the estate and later as the sole representative, (3) he was president and a director of a closely-held family corporation [the glass company] of which the testator was a majority stockholder, (4) he was a co-trustee of the Edward E. Bartlett and Helen Turner Bartlett Foundation [Foundation], a charitable foundation established by the testator and his wife, which was designated as the remainder beneficiary in the testator's will and (5) he succeeded the widow as co-trustee of the testamentary trust. The successor administrator, American National Bank & Trust Company of Sapulpa [Bank], was initially appointed to serve as conservator of the widow's estate when it became apparent she could no longer manage her business affairs. In that capacity the Bank petitioned for an accounting by Bartlett, who was then acting as the sole representative of the estate. When Bartlett later resigned as administrator, the Bank was appointed to succeed him. In its capacity as both conservator and successor administrator, the Bank filed objections to Bart-

lett's final accounting and sought to surcharge him for losses to the estate. Judgment was rendered on the final accounting, Bartlett was discharged as administrator and released from further liability. In its findings of fact and conclusions of law, the trial court (a) found that while acting as administrator Bartlett did violate various statutory provisions; (b) refused to surcharge him because the losses, if any, to the estate were not satisfactorily established and (c) declared that because of the violations found to have been committed the co-administrators forfeited their claim to the balance of the statutory fee as well as to an attorney's fee.

Upon Bartlett's failure to secure modification of that portion of the judgment which denied him additional compensation and legal fees, he brought an appeal. The Bank brought here a separate appeal challenging the trial court's refusal to surcharge the former co-administrator. Both of these appeals were consolidated for disposition by a single opinion.

## I

### EQUITABLE PRINCIPLES

■■■ Probate proceedings are of equitable cognizance. While an appellate court may and will examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be clearly against the weight of the evidence.[1] Whenever possible, an appellate court must render, or cause to be rendered, that judgment which in its opinion the trial court should have rendered.[2] If the result is correct, the judgment is not vulnerable to reversal because the wrong reason was ascribed as a basis for the decision or because the trial court considered an immaterial issue or made an erroneous finding of fact.[3] We are bound neither by the reasoning nor by the findings of the trial court. Whenever the law and facts so warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct.[4] Once invoked in a proper proceeding, equity will administer complete relief on all issues formed by the evidence regardless of whether the pleadings specifically tendered them for resolution.[5]

## II

### DETRIMENT TO THE ESTATE BY THE LOSS OF INTEREST INCOME FROM LOW–INTEREST LOANS

The Bank contends that Bartlett should have been surcharged $124,984.41 for income lost to the estate from low-interest loans. The measure of damage, the Bank asserts, is represented by the difference between the amount the estate would have received had the proceeds from the unauthorized sale of stock been invested in U.S. government securities, as required by 58 O.S.1981 § 581, and six-percent interest from the unsecured and unauthorized loans to the glass company. The Bank further challenges the trial court's finding that the widow consented both to the stock sale and to the loans.

We disagree that the former administrator should have been surcharged and hold that any loss which the estate may have sustained from the loans to the glass company may be offset by gains realized

1. *Harrison v. Eaves,* 191 Okl. 453, 130 P.2d 841, 844 [1942]; *Wahby v. Renegar,* 199 Okl. 191, 185 P.2d 184, 185 [1947]; *Snow v. Winn,* Okl., 607 P.2d 678, 681 [1980]; *Carpenter v. Carpenter,* Okl., 645 P.2d 476, 480 [1982].

2. *Snow v. Winn,* supra note 1; *Carpenter v. Carpenter,* supra note 1.

3. *Douglas v. Douglas,* 176 Okl. 378, 56 P.2d 362, 365 [1936]; *Janeway v. Security Bank & Trust Co. of Ponca City,* 177 Okl. 342, 58 P.2d 892, 896 [1936]; *Mahan v. Dunkleman,* 205 Okl. 54, 234 P.2d 366, 370 [1951]; *Carpenter v. Carpenter,* supra note 1.

4. *Moree v. Moree,* Okl., 371 P.2d 719, 720 [1962]; *Carpenter v. Carpenter,* supra note 1.

5. *Lackey v. Quigley,* 181 Okl. 492, 74 P.2d 927, 929 [1937]; *City of Moore v. Central Oklahoma Master Conservancy Dist.,* Okl., 441 P.2d 452, 459 [1968].

through the stock sale. In reaching this conclusion in this case we draw support from two principles of general trust law: (1) under these circumstances losses may be balanced against gains to the fiduciary estate and (2) consent of the beneficiary to trustee's acts affords the latter immunity from claims of ultra vires dealings. These principles are applicable with equal force and effect to the law that governs fiduciaries in administering a decedent's estate.

### A. The Offsetting Theory

When a trustee has engaged in a variety of unrelated investment transactions in breach of trust, some of which resulted in profits and others in losses, the trustee cannot net out the results of his unauthorized activities where the breaches of trust *are separate and distinct*.[6] Only if the breaches in contest *are not distinct* is the trustee accountable solely for the net gain or chargeable only with the net loss that results therefrom.[7] Hence, when a variety of improper investments are made, the trustee may be liable for the losses despite the fact that other investments produced offsetting profits. But where a trustee makes investment decisions resulting in an improper sale of trust property from which a gain or loss occurs and the proceeds of that sale are then invested in other property which is sold at a loss or gain, *there are not separate and distinct breaches of trust* and the trustee is liable to account only for the difference between a proper investment return and the net result of the improper but related investments.

### B. Consent of Beneficiary Rule

 A beneficiary who consents to an act or omission by the trustee which would constitute a breach of trust is precluded from holding the trustee liable for the consequences of the act or omission to which he has consented.[8] The consent is deemed effective when the beneficiary is *sui juris* and has knowledge of all relevant facts.

### C. Bartlett's Breaches of Duty

 The first breach of duty occurred when Bartlett sold the estate stock without court approval so that he would have liquid assets from which to make loans to the glass company. Bartlett testified that the stock had diminished in value at the time of the final accounting and that the estate would have been worth $148,000 less had the stock not been sold. This testimony stood unchallenged by cross-examination. The Bank sought only to determine how much of the gain was attributable to the sales of stock made without the widow's approval. Because Bartlett testified without contradiction that he had the widow's consent for all of the stock sales except those from which a gain of $77,000 was realized, he is entitled to claim no more than that amount as an offset for any losses occasioned by the six-percent loans.

The second breach in this transaction occurred when Bartlett made several loans to the glass company from the proceeds of the stock sale at the six-percent rate, totaling $1,701,500—all without court approval. The record reveals that the widow and the residuary beneficiary (the Foundation), consented in writing to loans of $800,000 from the estate funds. No other written documentation in evidence shows approval for the balance of the loans to the glass company. The testimony is also controverted as to whether consent was obtained from the beneficiaries for these loans.

The Bank argues that the widow's competency is a factor to be considered in determining her lack of consent to the loans. After the loans in suit had been made, the trial court appointed the Bank to serve as conservator of the widow's estate because she was no longer able to manage

6. Restatement (2d) of Trusts § 213; Scott on Trusts §§ 213–213.2 [3rd ed. 1967]; see also 16 Real Prop., Prob. & Tr. J. 715, 778 [Win.1981].

7. Scott on Trusts § 213.2 at p. 1719.

8. Scott on Trusts § 216; Restatement (2d) of Trusts § 216; see also *In re Spann*, 51 Okl. 309, 152 P. 68, 70 [1915]. In *Spann* we held that an executor or administrator has no right to speculate with the funds of an estate, but even if a loss is proven, he is not liable if the use of funds was made with the consent of, or by agreement with, those entitled to the estate.

her affairs. Three days before the hearing on the final account, the widow filed an instrument in the case in which she denied having any knowledge of the sale of stock or having given her consent to the loans.

 We are not persuaded by the testimony the Bank urges here as showing lack of consent. While the widow testified at the hearing that she did not give consent to the loans, this is sharply contrasted with her testimony on cross-examination which unfolded a considerably impaired memory for past events. When asked about the statement containing her denial, she could recall nothing about it—not even that she signed it just a few days earlier. She could not remember certain other past occurrences nor identify some of the people in the courtroom who worked closely with her. A finding that she gave her consent to the first series of loans totaling $800,000 would hence not be clearly against the weight of the evidence.

We need not determine whether the balance of the loans was approved by the beneficiaries because, under the limited principle of gains offsetting losses applicable in this case, a net gain will be shown to have been realized from the whole improper transaction. This is so because the loans for which approval was obtained—$800,000—cannot be considered in determining Bartlett's liability. Since the total of the loans ($1,701,500) upon which the loss ($124,984.41) was based must now be reduced by $800,000 (a 46% reduction), it then follows that the loss must also be reduced by a like percentage. This would leave a new loss balance of $67,491.58 upon which Bartlett's liability may be predicated. Because the estate realized a gain of $77,000 from the improper sale of stock and incurred a loss of only $67,491.58 from the related improper investment of the proceeds in loans to the glass company, Bartlett is accountable only for the net gain. It is not asserted here, nor do we find, that Bartlett failed to account for the net gain to the estate resulting from this transaction.

9. *In re Horseman's Estate,* 167 Okl. 355, 29 P.2d

## III

## LOSS TO THE ESTATE BY THE OMISSION TIMELY TO PAY ESTATE TAXES DUE IN A FOREIGN JURISDICTION

The Bank next argues that the court erred in not surcharging Bartlett for the interest and penalties on delinquent inheritance taxes owed to the State of Texas in the amount of $6,703.27.

All real property was devised by the will to the testator's widow. Bartlett ascertained that the testator had holdings in both the Virgin Islands and in Texas. He contacted legal counsel in these jurisdictions and initiated steps for the transfer of the real estate to the widow as provided for in the will. Bartlett testified that the estate taxes had been paid timely in the Virgin Islands upon the advice of counsel there, but that his omission to pay the Texas inheritance tax of $39,431.70 was caused by the failure of his Texas counsel to advise him that taxes were due. The trial court found that because, under these circumstances, Bartlett's failure to pay the tax from the domiciliary estate was neither intentional nor an unreasonable omission, he should not be surcharged for the penalty and interest which was assessed by the taxing authorities in Texas. Since no surchargeable loss was found, the trial court declined to pass on the issue of the widow's co-liability as co-administrator of the estate.

The Bank contends that the trial court applied an improper test in determining the administrator's nonliability. The correct judicial test, the Bank asserts, is whether the loss was caused by his fault.[9] The Bank urges that Bartlett had the burden to prove he was free from fault. Bartlett, on the other hand, argues that he has no duty under his appointment in Oklahoma to pay estate taxes on property in another state. He asserts that because the trial court has no authority over out-of-state real proper-

589, 592 [1934].

ty, the legal representative of the domiciliary estate is not responsible for its preservation.

■■■■ We cannot agree with Bartlett's position. One of the chief duties of an executor or administrator is to collect the assets and debts of the estate. This is included in the general duty to take charge of all the effects and personal assets belonging to the decedent and to preserve the same from damage, waste and injury.[10] This responsibility continues until the estate is closed. While it is clear that a personal representative appointed under the laws of the state of the decedent's domicile has no extra-territorial authority by virtue of his appointment,[11] it is the duty of a domiciliary representative to gather in, and account for, foreign assets of the testator, to the extent of his ability to do so. To hold that a representative owes *no* duty whatever would be to invite neglect and consequent waste and dissipation of the property. In short, it is the clear duty of a domiciliary personal representative to exercise every reasonable means to account for and to save the assets of the estate wherever located. The duty does not necessarily end at the boundary lines of the state where the representative was appointed.

■■■■ Moreover, under the terms of the will, all taxes of the estate were to be paid out of the residuary estate. Ascertaining with accuracy the entire tax liability was hence a crucial factor in winding up the estate. Indeed, all the principal aspects of an administrator's or executor's job are related in a significant way to the time for payment of taxes and to some approximation of the amounts due thereon. That the administrator relied on legal counsel to contact him about whether taxes were due does not afford a shield from liability. Bartlett should have taken steps toward ascertaining whether there was a tax due in Texas. Even though Bartlett may have been inexperienced in fiduciary tax matters, it was his duty to ascertain the crucial date when the return should have been filed. The record does not show that Bartlett made any effort to determine that date or to inform himself through the Texas counsel if and when taxes were due and payable. The matter of missing a due date for a tax return is not an error of law or of legal judgment for which the entire blame may be shifted to one's expert. This was not a matter of acting on the advice of counsel. It was a matter of neither knowing nor seeking to ascertain a key fact in the proper performance of one's fiduciary duty voluntarily undertaken.

■■■■ Accordingly, we hold that the trial court erred as a matter of law in finding that Bartlett was not liable for the penalty and interest which had ·accrued on the delinquent estate taxes.[12] Because the issue of the widow's co-liability as joint administrator was not decided below and because we have determined that there was a surchargeable loss to the estate from the failure timely to pay the estate taxes, we remand this cause for resolution of the co-liability issue.[13]

**10.** 58 O.S.1981 § 521; *In re Brown's Estate,* 178 Okl. 306, 62 P.2d 643, 644 [1936].

**11.** *In re Stewart's Estate,* 145 Or. 460, 28 P.2d 642, 645 [1934]; *Welsh v. Welsh,* 136 W.Va. 914, 69 S.E.2d 34, 40–41 [1932]; *Shinn's Estate,* 166 Pa. 121, 30 A. 1026, 1029 [1895]; *Williams v. Williams,* 79 N.C. 417 [1878]; *In re Estate of Massaglia,* 113 Cal.Rptr. 751, 38 Cal.App.3d 767 [1974].

**12.** We note that the Bank's petition in error and brief in chief reflect the loss to be *$6,703.27.* Bartlett's answer brief makes reference to the same amount. Breaking this figure down into interest and penalty, the Bank's brief shows the interest to be $4,647.46 and the penalty of $1,971.55, or a total of *$6,619.01.* Because these figures are inconsistent, the precise amount of the loss must be established below on remand.

**13.** An appellate court reviewing an equity case cannot exercise first-instance jurisdiction by making original findings. When necessary findings are absent, the case must be remanded with directions to make them. *Davis v. Gwaltney,* Okl., 291 P.2d 820, 824 [1955].

## IV

## REDUCTION OF THE STATUTORY FEE SOUGHT BY AN EXECUTOR OR ADMINISTRATOR MUST BE RELATED TO THE VALUE OF SERVICES PERFORMED, NOT TO PENALTY IMPOSABLE FOR BREACH OF DUTY

We next consider whether the trial court properly denied additional compensation to Bartlett and to the widow as co-administrators of the estate. Bartlett argues that he and the widow had performed substantially all the functions of legal representatives and were entitled to the *full* statutory fee. Before objections were filed to the final accounting, the trial court had approved payment of one-half of the compensation. Bartlett asserts here that the trial court erred in denying them the balance of $35,-791.63.

The trial court found that the co-representatives forfeited their claim to additional compensation because they together, or Bartlett alone, knowingly violated statutes by selling estate assets without the approval and confirmation of the court,[14] investing estate funds in other than U.S. governmental securities,[15] and failing to file timely accounts that would have revealed these violations.[16]

■ We hold that the trial court erred in reducing compensation as a penalty for the improper administration of the estate. Its punitive action in refusing to allow compensation reflects a misapprehension of the essential nature of the statutory compensation scheme.

It is axiomatic that equity abhors forfeitures.[17] Statutory compensation for a probate fiduciary consists of remuneration for services adequately rendered. The administrator's fee is measured by the quantum of benefit conferred by his services. The reduction of the statutory fee must be related solely to the quality and value of the services performed. Whenever the services are deemed to be of less than full value because of nonperformance, misperformance or breach of duty, the statutory fee can be reduced. But, where the fee is reduced or denied, this is done *not* for the purpose of imposing a penalty upon the administrator for committing a breach of duty, but on the ground that he has not adequately performed the services for which compensation is given.[18]

We note that a fiduciary is not entitled to the full statutory fee unless he has adequately completed the administration of the estate.[19] In determining the amount of compensation to be paid to one who has improperly performed his duties or who has ceased to be an administrator or executor, the court may consider how nearly the administration of the estate has been completed and in what manner, what services have been rendered, the quality thereof, and what portions still remain to be done. Where compensation for services rendered has been allowed, any liability which the administrator or executor may be deemed to have incurred for breach of duty can then be set off against the amount of compensation that is due.[20]

■ This portion of the decree is reversed and the cause is remanded for a determination of the value of the services rendered. Since the fee set below for the

---

14. The personal representative was in violation of 58 O.S.1981 § 462 if the will authorizes the sale or in violation of 58 O.S.1981 § 382 if it does not.

15. 58 O.S.1981 § 581.

16. The terms of 58 O.S.1981 § 547 require an accounting by the personal representative within one year of appointment. The co-administrators failed to meet this deadline.

17. *Sinclair Oil and Gas Company v. Bishop,* Okl., 441 P.2d 436, 441 [1968].

18. Scott on Trusts § 243 at p. 2138; *McInness v. Goldthwaite,* 94 N.H. 331, 52 A.2d 795, 800 [1947].

19. Scott on Trusts § 242.11 at pp. 2135–2138; see also *In re Cook's Estate* 193 Okl. 400, 144 P.2d 105, 106 [1943].

20. Scott on Trusts § 243 at p. 2139.

widow is final as to her because neither she nor the decedent's estate appealed from it, her compensation cannot be affected on remand either beneficially or detrimentally.[21]

## V

## ATTORNEY'S FEES

The issue of whether additional attorney's fee was properly denied is one separate from the question of compensation to the personal representatives. The representatives clearly had the authority to employ counsel to assist them in the administration of the estate.[22] As a general rule, they are entitled to reimbursement from the estate for the cost of employing an attorney, as they would be for other necessary expenses of administration.[23]

Bartlett asserts that the trial court had no authority to modify an agreement regarding the amount of legal fees to be paid from estate funds because all interested parties had approved it. He points out that no one, including the Bank, challenged either the granting of legal fees or the amount. At the time the co-administrators received the first half of their compensation, one half of the attorney's fees was also paid. At the hearing on final account, the trial court denied the balance of the legal fees sought—$37,194.13—stating that the personal representatives had "forfeited" the claim to attorney's fees for the very same reasons that they had lost the right to the balance of their statutory fee.

Bartlett's proposition that a trial court may not modify an agreement set-ting legal fees is not supported by extant case law. A personal representative is without authority to bind an estate for any fixed sum.[24] He cannot, by virtue of his general powers, make any contracts that bind the estate to make a payment out of its assets.[25] This is true even though the contract is for the benefit of the estate, and he is acting in his representative capacity. The only binding obligation the personal representative can make is that authorized by statute or the decedent's will or is ordered by the court.

Attorney's fees are not paid out of an estate by virtue of an employment contract, but rather because the personal representative is entitled to reimbursement for the fees necessarily incurred in the administration of the estate or in litigation for the benefit of the estate. As a general rule, co-representatives are jointly and severally liable if they act together or one approves or acquiesces in the improper conduct of the other.[26] In such case, the attorney's fee would be collectible from either personal representative, who in turn is entitled to contribution from the other. The personal representative may, in a proper case, seek reimbursement from the estate.

Oklahoma case law offers an additional remedy for a lawyer which does not affect the personal liability of the representatives. An attorney has standing to apply directly to the estate for fees, which the trial court may grant, even over the objection of the administrator or executor.[27] With respect to the estate's liability

**21.** *May v. May,* Okl., 596 P.2d 536, 540 [1979]; *Woolfolk v. Semrod,* Okl., 351 P.2d 742, 745 [1960]; *Cleary Petroleum Corp. v. Harrison,* Okl., 621 P.2d 528, 534 [1980].

**22.** *Tims Funeral Home v. Phillips,* Okl., 501 P.2d 493, 496 [1972]. This case holds that the expenses of administration, including necessary and reasonable attorney's fees, have full and complete priority over all other obligations of the estate.

**23.** 58 O.S.1981 § 525.

**24.** *In re Schwint's Estate,* 183 Okl. 439, 83 P.2d 161, 163 [1938]. An administrator may contract

to pay a fee fixed by the court, which will release the representative from personal liability to the attorney for any other amount.

**25.** A personal representative, like a trustee, is not an agent. See *Mertz v. Owen,* 191 Okl. 77, 126 P.2d 720, 726–727 [1942].

**26.** 13 A.L.R.3rd 518; Restatement (2d) of Trusts §§ 224, 258.

**27.** *Nichols v. Wallace,* 155 Okl. 231, 9 P.2d 430, 431 [1932]; *In re Wah-kon-tah-he-ump-ah's Estate,* 128 Okl. 179, 261 P. 973, 976 [1928].

for attorney's fees, it is immaterial that the fees are allowed directly to the attorney rather than first being paid to the personal representative.[28]

■ Bartlett and the testator's widow were entitled to employ legal counsel to render services for the estate and the attorney was entitled to reasonable compensation for necessary services. The record is devoid of any allegations or evidence of misconduct by the attorney. Counsel's own testimony indicates that he advised his client to obtain the consent of interested parties before making the loans to the glass company. Under these circumstances we find that the trial court's denial of additional attorney's fees was clearly against the weight of the evidence and unauthorized by law.

■ Because no evidence was offered as to the value of the services rendered the estate by the attorney, we must reverse that portion of the judgment and remand the cause for determination of the fee that is properly due. The question of reasonableness of the fee is left to the sound discretion of the trial court. While the court may consider expert testimony on the value of the services rendered, it is not bound by the opinion of others.[29] Such opinions are persuasive only.

■ We cannot agree with Bartlett's assertions that a fee based upon the former minimum standard fee set by the Oklahoma Bar Association is to be deemed reasonable, and that in no event should a lawyer receive a lower fee than the statutory fee provided for legal representatives of the estate.[30] To the contrary, the criteria for the court to consider in establishing a fee are those recited in *State ex rel. Burk v. City of Oklahoma City*.[31] We emphasize that the fee is to be awarded only for

necessary services rendered to the personal representatives in the preservation and care of the estate and *not* for representation of the former administrator in matters unrelated to these duties.

The trial court's judgment is reversed in part and affirmed in part in accordance with our pronouncement herein and the causes are remanded with directions: (1) for a determination of the co-liability, if any, of the testator's widow, as co-administratrix of the estate, for the loss caused by the assessment of penalty and interest for late payment of estate tax in Texas; (2) for a determination of the amount of interest and penalty assessed by the Texas taxing authorities and for imposition of a surcharge against Bartlett in whole or in part, depending upon the co-liability of the widow, for his omission timely to pay inheritance taxes in Texas; (3) a determination of the amount of compensation to which Bartlett is entitled from the unpaid balance of the statutory compensation fee; and if additional compensation is warranted, it may be offset against the amount of surcharge imposed on Bartlett; and (4) for a determination of the amount owing for services rendered by the attorney to the estate.

BARNES, C.J., and HODGES, LAVENDER, HARGRAVE and WILSON, JJ., concur.

SIMMS, V.C.J., concurs in Parts I, III, IV and V, and dissents from Part II.

**28.** *In re Wah-kon-tah-he-ump-ah's Estate,* supra note 27 at 261 P. 976.

**29.** *In re Schwint's Estate,* supra note 24 at 83 P.2d 163.

**30.** 58 O.S.1981 § 527.

**31.** Okl., 598 P.2d 659 [1979].