**STATE of Oklahoma, ex rel., OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Edward L. MOORE, Jr., Respondent.**

**SCBD No. 3333.**

Supreme Court of Oklahoma.

March 30, 1987.

Rehearing Denied July 21, 1987.

Alan B. Foster, Asst. Gen. Counsel, Oklahoma City, for complainant Oklahoma Bar Ass'n.

Jones & Jennings by Stephen Jones, Enid, for respondent Edward L. Moore, Jr.

LAVENDER, Justice:

Complainant Oklahoma Bar Association initiated these disciplinary proceedings against respondent Edward L. Moore, Jr., alleging four counts of misconduct necessitating discipline. The first and fourth counts alleged that Moore had misappropriated funds from two estates in which he served as executor and attorney. The second count alleged negligent handling of a client's affairs in a matter unrelated to the estates. The third count alleged that Moore had acted as defense counsel for a defendant in a case in which he had initially filed the charges when acting as assistant district attorney.

The Professional Responsibility Tribunal heard testimony in this matter over the course of two three day long sessions. The trial tribunal found that Moore had been guilty of various violations of the Code of Professional Responsibility regarding the handling of the estates referred to in counts one and four of the complaint. The trial tribunal also found that Moore was guilty of negligent handling of a client's affairs in the matter referred to in count two. Moore was found not guilty of misconduct in the matter covered by the third count. Based on these findings and its consideration of both mitigating and aggravating factors the tribunal recommended that Moore be disbarred.

This Court has conducted an independent review of the evidence submitted to the trial tribunal. We find clear and convincing evidence to establish that Moore was guilty of misappropriating funds from two estates in which he served as executor and attorney. We also find clear and convincing evidence that Moore acted negligently in handling the affairs of the client covered in count two of the complaint. Because we find these offenses warrant the disbarment of respondent Moore, we find it unneces-

sary to discuss the remaining count of the complaint.

## COUNT ONE

Count one of the complaint concerned Moore's handling of the Maude Vorhees estate. Moore was appointed executor of the estate under the will. The will provided that the estate was to go to a single heir. The estate consisted of real property, cash and credits and stocks in local co-ops. The estate also received considerable funds from oil and gas royalties. The record of the receipts and disbursements in the Vorhees estate account shows that Moore paid funds from the account into the Ed Moore escrow account in the total sum of $126,358.37 between the dates of November 11, 1983 and May 10, 1984.

The money from the estate account which Moore had transferred to his escrow account came from the cash originally in the estate, from oil and gas royalty payments and from the sale of two estate property interests. Moore received, as executor of the estate, $75,750 and $16,500 respectively, for the sale of these interests. The sale was confirmed on August 2, 1983. Moore had informed the heir of the estate that the sale was necessary to obtain funds to pay taxes on the estate.

The petition for settlement of final account, determination of heirship and distribution was filed November 13, 1984. This petition, signed by Moore, related that all taxes had been paid. The probate judge, at the trial of this matter, testified that Moore had stated in conjunction with the petition, that, although the taxes had not yet been paid, the funds had been reserved and arrangements made for payment. The decree of settlement in the estate was entered on December 4, 1984.

On June 5, 1985, the IRS contacted the heir of the Vorhees estate by letter and informed her that $50,268 in estate taxes were due plus $18,506.19 in interest and penalties and a $239.60 bad check charge for a check submitted by Moore. Investigation revealed that the Oklahoma estate taxes had not been paid and $56,002.82 was owing for taxes plus $13,140.73 in interest. The evidence at trial also revealed that Moore, personally or through his office, had provided a fraudulent tax release to the heir showing the Oklahoma taxes to have been paid prior to April 1985.[1] The heir eventually had to mortgage the property passed to her in the estate to pay taxes.

Following the notices from the IRS the heir's daughter-in-law filed a complaint concerning Moore's actions with the Bar Association. After this complaint had been filed, Moore entered into negotiations with the heir and eventually paid back all funds expended by and from the estate in return for a release from liability to the estate and an agreement that the heir would withdraw the complaint to the Bar Association.

This evidence clearly and convincingly establishes that Moore, as executor and attorney for the Vorhees estate, paid $126,358.37 out of the estate account into a fund over which he had exclusive control. It is also clear that Moore had the use of those funds for over a year between the time of the last deposit in his escrow account and the arrival of the notices from the IRS. Moore, when challenged following the IRS notifications, did not turn funds over to the estate and did not furnish an accounting of the expenditure of the funds withdrawn.[2] Although Moore has furnished no accounting of how those funds were expended, it is apparent that they were not expended for the purposes of the estate and that Moore, either directly or through his office, made fraudulent representations to the probate court and to his client concerning the handling of these funds.

We find the evidence on this count to clearly and convincingly establish the viola-

---

1. This tax release form, which proved to be fraudulent, was furnished to the heir following demands on Moore that such a release be obtained so that co-op stocks in the estate could be transferred to the heir.

2. Moore's failure to give over and account for the funds makes his actions a conversion of those funds under Rule 1.4(b) of the Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A.

tion of DR 1–102(A)(4), (5), and (6), DR 6–101(A)(3), DR 6–102(A), DR 7–101(A)(3), DR 9–102(B)(3) and (4) [3] and Rule 1.4(b) of the Rules Governing Disciplinary Proceedings.[4]

## COUNT TWO

The second count of the complaint concerned Moore's handling of a lawsuit on behalf of Darrell Koehn. This lawsuit arose out of a leak of contaminated drilling fluids onto Koehn's land in May 1981. Moore did not file a petition in the case until May 1984, following the filing of a complaint with the Bar Association concerning Moore's handling of the matter. Although Moore presented an explanation of his delay in filing the petition as being a matter of strategy, his reasoning was unconvincing. Moore testified that his delay was because the land was cropland and would not reflect the extent of damages for at least one year following the spill. Koehn, however, testified that the land was, and had been, planted in Bermuda grass.

We find the evidence on this count to clearly support a determination that Moore was negligent in the handling of this client's affairs.[5] Moore's actions were in violation of DR 6–101(A)(3).[6]

## COUNT FOUR

The fourth count of the complaint accounts for the bulk of the record in this case. This count concerns the handling of funds belonging to the estate of J. Robert Reneau. Moore has admitted "borrowing" some $484,876 from this estate, a good portion of which was clearly shown to have gone for Moore's personal purposes. Moore's defense on this count was that his two co-executors in the estate had acquiesced to his actions and that they had told him that the beneficiary who was to receive the cash assets of the estate also consented to his use of the funds.

Although we find Moore's arguments in regard to the acquiescence of his co-executors to be beside the point, as the co-executors lacked the authority to make Moore's actions in using estate funds for his own purposes proper,[7] we find the evidence before the trial tribunal to clearly and convincingly support the finding that the co-executors neither acquiesced to the misuse of funds nor to Moore's signature of their names to checks drawn on the estate account.[8] We find that this evidence supports the trial tribunal's conclusion that the names of Moore's co-executors on checks drawn on the estate account were, in several instances, forgeries.

The evidence presented to the trial tribunal reflects a series of transactions in which Moore: 1) altered a check made payable to the IRS, after it had been signed by his co-executors, to make it payable to himself; 2) signed the names of the two co-executors to checks on the estate account, and, at least on several occasions, used the money for his personal purposes; 3) borrowed money on his own signature as co-executor pledging assets of the estate as security from a bank which would not loan Moore money in his own name, and used

---

3. Code of Professional Responsibility, 5 O.S. 1981 Ch. 1, App. 3.

4. Supra, note 2.

5. The evidence also reflects that Moore neglected to respond to numerous attempts by Mr. Koehn to contact him regarding the case.

6. Supra, note 3.

7. Moore attempts to rely on the case of *In re Spann*, 51 Okl. 309, 152 P. 68 (1915), for his assertion that his actions in borrowing money from the estate were proper. *Spann* stands for the proposition that an executor will not be liable to an estate for loss occasioned from investment in the executor's own business *if all entitled* to the estate gave permission for such investment *after full disclosure* of all risks. The evidence in this case establishes that at least one of the heirs of the estate had no knowledge whatsoever concerning Moore's use of estate funds.

8. The co-executors denied knowledge of misuse or consent to Moore's actions before the trial tribunal. Moore has raised the question of their credibility as a predominant point in his argument to this Court. We find the evidence to support the credibility of these witnesses regarding their lack of knowledge of Moore's actions in using estate funds and signing their names to checks.

these borrowed funds, at least partially, for his own purposes; and 4) transferred money from the estate account to his own account which he used to satisfy personal obligations. When Moore's actions regarding the estate were called into question by one of the heirs of the estate Moore failed to either turn over all funds belonging to the estate or to account for all expenditures of the funds of the estate.

We find the evidence on this count to clearly and convincingly establish the violation of DR 1–102(A)(4), (5) and (6), DR 6–101(A)(3), DR 6–102(A), DR 7–101(A)(3), DR 9–102(B)(3) and (4) [9] and Rule 1.4(b) of the Rules Governing Disciplinary Proceedings.[10]

## DISCIPLINE

In reaching its conclusion on the recommendation of discipline the trial tribunal considered circumstances in mitigation of discipline as well as factors it found to aggravate the imposition of discipline. The major factors considered in mitigation were the restitution of funds to the estates and Moore's past career and service to the Bar. In *State ex rel. Oklahoma Bar Association v. Raskin,* [11] we disapproved of the consideration of restitution as a mitigating factor in the imposition of discipline for various reasons, not least of which was that restitution is often more closely related to the means of the respondent than to moral character. In *Raskin* we also stated that a prior record of service and achievements as a lawyer has minimal influence in mitigation where misappropriation of client's funds is involved.

In *Raskin* this Court stated: [12]

Maintenance of public confidence in this court and in the bar as a whole requires the imposition of severe discipline in misappropriation cases. ... A lawyer's license is a certificate of professional fitness to deal with the public as a practitioner of law. That fitness stands terminated after a single act of dishonest dealing with the client's funds. Any other approach would rightly confuse or equate a lawyer's state franchise with a license to cheat the public.

Additionally we have reviewed the discipline imposed by this Court in conjunction with misuse and misappropriation of funds from estates represented by respondent attorneys in several past cases. In two of these cases, *State ex rel. Oklahoma Bar Association v. Lowe,* [13] and *State ex rel. Oklahoma bar Association v. Keeran,* [14] this Court imposed a lesser discipline than disbarment. In *Lowe,* the respondent attorney was found to have been guilty of three counts of commingling clients' funds intended for estate tax purposes and failing to timely pay the taxes due. A two year suspension was imposed in that case. In *Keeran* the dispute involved a fee taken by the respondent attorney from the estate without judicial approval. The respondent attorney agreed to refund part of the fee. A one year suspension was imposed as a result of that respondent's failure to make the agreed refund and because of false representations made to the former client regarding the failure to make the payment.

In two of the cases reviewed, *State ex rel. Oklahoma Bar Association v. Bishop,* [15] and *State ex rel. Oklahoma Bar Association v. Myers,* [16] this Court imposed the discipline of disbarment. In *Bishop* the respondent attorney was found to have been guilty of forging the name of his client to a settlement check in connection with a nonprobate matter and depositing the proceeds to his personal account. Additionally, the respondent was also found to have commingled estate funds in a separate probate matter and to have converted those funds to his own use and benefit. In

9. Supra, note 3.

10. Supra, note 2.

11. 642 P.2d 262 (Okla.1982). See also *Matter of Wilson,* 81 N.J. 451, 409 A.2d 1153 (1979).

12. 642 P.2d at 268.

13. 640 P.2d 1361 (Okla.1982).

14. 495 P.2d 399 (Okla.1972).

15. 556 P.2d 1276 (Okla.1976).

16. 424 P.2d 975 (Okla.1976).

*Myers* the respondent attorney was disbarred after a finding that he had commingled estate funds and had encumbered estate property on the basis of a falsified order from the probate court and had used funds from the note secured by the estate property partially for his own purposes. In *Myers* the respondent presented the argument that the heir of the estate was satisfied with the "arrangements."

We find the gravity of the offenses proven in the present case to be of a similar nature to those present in *Bishop* and *Myers* rather than to the circumstances of *Lowe* and *Keeran*. In the present case Moore has been shown to have produced falsified official documents in the Vorhees estate. He has been shown to have forged the names of his co-executors to checks drawn on the Reneau estate account and to have used that money for his own purposes. He has also been shown to have encumbered property of the Reneau estate without authority and used the funds obtained for his own purposes.

We order that Edward L. Moore, Jr., be disbarred and his name stricken from the roll of attorneys. The costs of the proceedings in discipline in the amount of $11,859.81 shall be borne by Moore. They are to be paid immediately after this opinion becomes final.

HARGRAVE, V.C.J., and HODGES, OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

DOOLIN, C.J., and SIMMS, J., disqualify.